KNOLL, Justice.
_[iIn this case, we are called upon to decide whether an ordinance of the City of New Orleans for the collection of delinquent ad valorem taxes is a valid exercise of its plenary power under its home rule charter. The ordinance in question permits the City of New Orleans to place for collection with an attorney or collection agent delinquent ad valorem property taxes, to levy penalties, including a penalty to cover costs of collection by an attorney or collection agent, for delinquent ad valorem property taxes, and to sue to collect the delinquent tax. This case is before us pursuant to our appellate jurisdiction, La. Const, art. V, § 5(D), because the ordinance has been declared unconstitutional by the Fourth Circuit Court of Appeal. For the following reasons, we find the ordinance is an unconstitutional exercise of the City’s plenary power under its home rule charter, because the Louisiana Constitution provides tax sales as the exclusive method for a governmental subdivision to collect delinquent ad valorem property taxes and does not allow for the imposition of a penalty for delinquent ad valorem property taxes.
FACTS AND PROCEDURAL HISTORY
On March 5, 1998, the New Orleans City Council adopted Ordinance No. | ¡>18637, codified in the New Orleans Code of Ordinances, Chapter 150, Article II, §§ 150-46.1 through lSO^RA[1] Ordinance No. 18637 provides:
AN ORDINANCE to provide for interest and increased penalties on delinquent ad valorem taxes and for the payment of costs and attorneys’ fees in connection with the collection of such taxes:
*229 WHEREAS, the City of New Orleans incurs significant delinquencies in the collection of ad valorem tax revenues due to (i) lack of penalties to encourage prompt compliance by the taxpayers with the tax laws and (ii) lack of provision for collection fees, attorneys [sic] fees, costs and expenses; and attorneys’ fees and costs to cover- the costs of collection; and
WHEREAS, the City will be able to increase revenues from ad valorem taxes through the implementation of interest and penalties and in imposing collection fees, attorney fees, costs and expenses on the taxpayer;
SECTION 1. THE COUNCIL OF THE CITY OF NEW ORLEANS HEREBY AMENDS SECTION 150-46 OF THE CODE OF THE CITY OF THE CITY OF [sic] NEW ORLEANS AND ORDAINS, that Section 150-46 of the Code of the City of New Orleans is adopted and ordained to read as follows:
Sec. 150-46.1 Taxing Unit.
A taxing unit for purposes of this Section shall mean the City of New Orleans and all jurisdictions for which the Director of Finance for the City of New Orleans collects ad valorem taxes.
Sec. 150-46.2 Penalty and Interest.
(a) A delinquent tax incurs a penalty of three percent of the amount of the tax on the day such tax becomes delinquent.
(b) A delinquent tax accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid in accordance to LSA-R.S. 47:2101.
Sec. 150-46.3 Additional Penalty for Collection Costs.
(a) All delinquent taxes for prior years, and taxes that remain delinquent on April 1 of the year in which they became delinquent, incur an additional penalty to defray costs of collection if the taxing unit has referred the collection of the delinquent taxes, penalty and interest to an attorney or collection agent. The amount of the additional penalty shall be thirty percent of the amount of taxes, penalty and interest due.
| oSec. 150-46.4 Suit to Collect Delinquent Tax.
(a) At any time after its tax on property becomes delinquent, a taxing unit or its authorized agent may file suit to foreclose the lien securing payment of the tax. The suit must be in a court of competent jurisdiction for the parish in which the tax was or is imposed.
(b) A suit to collect a delinquent tax takes precedence over all other suits pending in courts.
(c) In a suit brought under Subsection (a), a taxing unit or its authorized agent may foreclose any other lien on the property in favor of the taxing unit.
Sec. 150-46.5 Recovery of Costs and Expenses.
(a) In addition to other costs authorized by law, a taxing unit or its authorized agent is entitled to recover from the subject property and, in the case of delinquent personal property taxes, against the tax debtor the following costs and expenses in its effort to collect a delinquent tax:
(1) all usual court costs, including the cost of serving process;
(2) costs of filing for record of notice of lis pendens against property;
(3) expenses of tax sale;
(4) reasonable expenses that are incurred by the taxing unit or its *230 authorized agent in determining the name, identity and location of necessary parties and in procuring necessary legal descriptions of the property on which a delinquent tax is due; and
(5) in cases where Sec. 150-46.3(a) is not applicable, reasonable attorney’s fees of thirty percent of the total amount of taxes, penalties, and interest due the unit.
(6) reasonable curator fees and expenses.
(b) Each item specified by Subsection (a) of this section is a charge against the property and shall be collectible in the same manner as the taxes, interest, penalties and costs due by the tax debtor and is subject to collection by foreclosure in a suit or as otherwise provided by law and shall be collected out of the proceeds of the sale of the property.
|4(c) The Director of Finance or his/ her authorized agent, with the approval of the Mayor or the Chief Administrative Officer, is authorized to employ private counsel to assist in the collection of any taxes, penalties, interest or costs and expenses, including attorney’s fees, [sic] due or to represent him in any proceeding under this section.
Sec. 150-46.6 Liability of Taxing Unit for Costs
(a) Except as provided by Subsection (b) of this section, a taxing unit or its authorized agent is not liable in a suit to collect taxes for court costs, including any fees for service of process, arbitration, or mediation, and shall not be required to post security for the costs.
(b) A taxing unit or its authorized agent shall pay the cost of publishing citations, notices of sale, or other notices from the unit’s general fund as soon as practicable after receipt of the publisher’s claim for payment. The taxing unit is entitled to reimbursement from other taxing units that are parties to the suit for their proportionate share of the publication costs on satisfaction on any portion of the tax indebtedness before further distribution of the proceeds. A taxing unit may not pay a word or line rate for publication of citation or other required notice that exceeds the rate the newspaper publishing the notice charges private entities for similar classes of advertising.
Pursuant to a contract with the city of New Orleans (“City”), the law firm of Heard, Linebarger, Graham, Goggan, Blair, Pena & Sampson, L.L.P. (hereinafter “the law firm”)[2] and United Governmental Services of Louisiana, Inc. (“UGSL”) provided tax collection services under the Ordinance. Plaintiffs, A. Remy Fransen, Jr. and Allain F. Hardin, own immovable property in New Orleans. Fransen received a letter of May 19, 2000, from the law firm informing him that the 2000 taxes on his immovable property were delinquent. Enclosed with the letter was a detailed tax statement. Fransen responded in writing to the law firm, enclosing his check of $5,301.54 for the 2000 real estate tax owed and asking what authority permitted assessment of interest and penalty totaling $2,072.91. Fransen also sent correspondence to the City’s Department of Finance with the same inquiry. The 1 ¡^Department of Finance responded in a letter dated June 21, 2000, stating that the $5,301.54 payment was credited as *231 follows: $3,811.32 to tax,- $152.45 to accrued interest, $114.34 to delinquency penalty and $1,223.43 to collection penalty. On January 15, 2001, Fransen again wrote to the Department of Finance, enclosing a check for $2,227.89 representing payment for the interest,- penalty and collection penalty for the 2000 taxes. He indicated that he was contesting this payment.
Hardin received his 2001 tax bill in December 2000; payments made after January 31, 2001 were considered delinquent. In April 2001, Hardin discovered the check he had written for payment of the taxes had inadvertently not been mailed, and he then mailed the check. When he received his cancelled check, he noticed that it had a notation as “partial payment.” He contacted the City’s Department of Finance and was told $2,338.08 was owed for penalties, interest and collection costs. Accompanying his check for payment of this amount was a letter indicating he was paying under protest.
Fransen and Hardin then filed suit against the City and law firm. In this suit, plaintiffs alleged, inter alia, the ordinance was in violation of the Louisiana Constitution and requested service upon the state attorney general. Plaintiffs later amended their original petition to add UGSL as an additional defendant.[3]
Plaintiffs filed a motion for partial summary judgment to declare the ordinance unconstitutional on its face. Defendants filed a peremptory exception of no right of action and a cross-motion for summary judgment; defendants moved for summary judgment on the same constitutional issues raised in the plaintiffs’ motion. These | ¿matters were heard by the district court on November 10, 2005. After taking-the matter under advisement, the court rendered judgment denying the defendants’ exception of no right of action, denying plaintiffs’ motion for partial summary judgment and granting defendants’ motion for summary judgment. In written reasons, the court stated the ordinance is valid and the Louisiana Constitution does not limit the ways in-which the City can collect delinquent ad valorem taxes. Upon motion by the plaintiffs, pursuant to La. Code Civ. Proc. art. 1915 B(l), the court designated the judgment as a final judgment for purposes of appeal on the sole issue of the constitutionality of the ordinance.
Plaintiffs appealed the district court judgment upholding the constitutionality of the ordinance, arguing that the obligation imposed by ad valorem taxes on immov-ables is an in rem obligation, recoverable only against the property; that La. Const, art. VII, § 25 limits recovery of delinquent ad valorem taxes on immovable property only by tax sale; and that by allowing the City to file a suit to foreclose the tax lien, the ordinance deprives the citizens of the right of redemption guaranteed in Article VII, Section 25(B).
The court of appeal reversed, declaring the ordinance to be unconstitutional. The appellate court found the ordinance, by allowing the City or its authorized agent to file suit to collect the delinquent tax and to recover court costs and attorneys’ fees, *232 violates La. Const. art. VII, § 25, because that provision prohibits the tax collector from filing suit against the taxpayer in the event of nonpayment of taxes. Fransen v. City of New Orleans, 06-1325, p. 10 (La. Ct.App. 4 Cir. 10/3/07), 970 So.2d 1, 8. The court further found the remaining portion of the ordinance not severable from the offending portion because this would result in an ordinance allowing the collection of a 30% penalty against delinquent taxpayers without any enforcement provisions. 17M, 06-1325 at 10-11, 970 So.2d at 8. It held La. Const. art. VII, § 25 provides tax sales as the method of collecting delinquent ad valorem taxes, but the exercise of the provision in the ordinance allowing the City to file suit to foreclose the lien essentially strips the taxpayer of the constitutional right of redemption after tax sale, and therefore is facially unconstitutional. Id., 06-1325 at 11, 970 So.2d 8. Finally, the court found the 30% collection penalty to be a legal fee disguised as a penalty, inconsistent with La. Const, art. VII, § 25(B)(1), which limits the penalty for delinquent ad valorem taxes to 5% and does not include a provision for attorneys’ fees. Id., 06-1324 at 11-12, 970 So.2d at 8-9. Defendants applied for supervisory writs, which we then docketed as an appeal under our appellate jurisdiction.
LAW AND ANALYSIS

Standing

Initially we must address defendants’ threshold argument that plaintiffs lack standing to challenge Sec. 150-46.4 of the ordinance, which pertains to suit to collect delinquent tax, because plaintiffs were never subject to suit. As a result, defendants maintain that section of the ordinance was not implicated by the facts of this case, and the court of appeal imper-missibly issued an advisory opinion concerning this section. Defendants additionally argue no justiciable controversy exists, because the ordinance permits the City to file suit, but the City has not done so. Stoddard v. City of New Orleans, 246 La. 417, 423, 165 So.2d 9, 11 (1964) (a justicia-ble controversy did not exist where municipality took no action to implement the statute).
Plaintiffs own immovable property in the taxing jurisdiction, were delinquent on the payment of the ad valorem taxes on these immovables, and were assessed interest, delinquency penalty and collection penalty pursuant to the ordinance. For each month the tax, interest and penalty remain unpaid, the amount due increased. |sThe record shows the City applied payments first to the interest and penalties, leaving a balance owed on the tax due if the payment was insufficient to cover the tax, interest and penalties. Thus, if the tax remained delinquent, the property was subject to a suit to foreclose the lien. Under these circumstances, where plaintiffs were faced with the choice of paying the interest and penalties under protest and filing suit to challenge the constitutionality of the ordinance or leaving it unpaid and subject their immovable property to a suit, we cannot say their choice renders them without standing to challenge the ordinance, even though their immovable property was not subject to suit once the taxes, interest and penalties were paid. A party has standing to argue that a statute violates the constitution where the statute seriously affects the party’s own rights. In re Melancon, 05-1702, p. 8 (La.7/10/06), 935 So.2d 661, 667. To have standing, a party must complain of a constitutional defect in the application of the statute to himself, not of a defect in its application to third parties in hypothetical situations. Id.; Greater New Orleans Expressway Comm’n v. Olivier, 04-2147, p. 4 (La.1/19/05), 892 So.2d 570, 573-574. It is *233 axiomatic that if one is subject to an ¡ordinance and must either pay a monetary penalty or have one’s immovable property subject to suit, the statute seriously affects that person’s rights, and his choice between the two alternatives cannot foreclose the possibility of his challenging the constitutionality of the ordinance applied to him. Plaintiffs challenged the constitutionality of the 30% collection penalty and the constitutionality of the mechanism to enforce that penalty, a suit to foreclose the lien.[4] They clearly have a real and actual interest at stake which can be legally protected.
We do not find defendants’ reliance upon Stoddard persuasive or on point. In \ Stoddard, taxpayers of the city of New Orleans sought a declaratory judgment that a legislative act was unconstitutional. The statute authorized parishes, municipalities and port authorities to promote industrial development and to appropriate and expend public funds in furtherance of this promotion. This court found that because the city had taken no action to implement the statute, the court held the attack upon the statute did not present a justiciable controversy. Stoddard, 246 La. at 428, 165 So.2d at 11. For reasons discussed above, the matter before us presents a justiciable controversy, as the plaintiffs have a real and actual interest in challenging the penalty and enforcement mechanism to which they were subject. Moreover, the City has taken action to implement the ordinance, by assessing and collecting the penalty.
We are farther buttressed in support of our finding that plaintiffs have standing because of their right as taxpayers to enjoin unlawful action by a public body. World Trade Ctr. Taxing Dist. v. All Taxpayers, Property Owners, 05-0374, p. 10 (La.6/29/05), 908 So.2d 623, 631; Louisiana Associated Gen. Contractors, Inc. v. Calcasieu Parish Sch. Bd., 586 So.2d 1354, 1357 (La.1991). Under Louisiana law, a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. World Trade Ctr., 05-0374 at p. 10, 908 So.2d at 631; Louisiana Associated Gen. Contractors, 586 So.2d at 1357; Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941). Given plaintiffs’ contention that the enactment of the ordinance is unlawful under the Louisiana constitution and unjustly affects them and/or their property, we find no merit to defendants’- argument that plaintiffs lack standing because the City did not exercise the suit provision of the ordinance. We now turn to the examination of the ordinance and its constitutionality,- vel non.
| inConstitutional Interpretation Principles
In determining the constitutionality of the ordinance, it is important to keep certain principles before us. An ordinance, like a state statute, is presumed to be constitutional. Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515, 520 (La.1983). In construing a municipal ordinance, courts use the same guidelines as those used in construing a state statute. Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 894 n. 5 (La.1993). The presumption of a statute’s constitutionality is especially forceful in the case of statutes enacted to promote a pub- *234 lie purpose, such as statutes relating to taxation and public finance. World Trade Ctr., 05-0374 at 11, 908 So.2d at 632; Caddo-Shreveport Sales and Use Tax Conmm’n v. Office of Motor Vehicles through Dep’t of Public Safety and Corrections, 97-2233, p. 5 (La.4/14/98), 710 So.2d 776, 779. Unlike the federal constitution, our state’s constitution’s provisions are not grants of power, but instead are limitations on the otherwise plenary power of the people. State v. All Prop. and Cas. Ins. Carriers Authorized and Licensed to do Business in the State, 06-2030, p. 6 (La.8/25/06), 937 So.2d 313, 319; World Trade Ctr., 05-0374 at 11, 908 So.2d at 632; Louisiana Dep’t of Agric. and Forestry v. Sumrall, 98-1587, p. 5-6 (La.3/2/99), 728 So.2d 1254, 1259. Pursuant to Article VI of the Louisiana Constitution, a municipal authority governed by a home rule charter possesses powers, in affairs of local concern within its jurisdiction, that are as broad as those of the state, except when limited by the constitution, laws permitted by the constitution or its own home rule charter. La. Const. art. VI, §§ 4-5; Civil Serv. Comm’n of the City of New Orleans v. The City of New Orleans, 02-1812, p. 4 (La.9/9/03), 854 So.2d 322, 326. Because, the city of New Orleans is governed by a home rule charter, principles for the determination of the constitutionality of a legislative enactment are equally Inapplicable to the ordinance at issue here.
Because statutes are presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. Wooley v. State Farm Fire and Cas. Ins. Co., 04-0882, p. 19 (La.1/19/05), 893 So.2d 746, 762. A party seeking a declaration of unconstitutionality must show clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute in question. World Trade Ctr., 05-0374 at 12, 908 so.2d at 632; Caddo-Shreveport Sales and Use Tax Comm’n, 97-2233 at 5-6, 710 So.2d at 779; Polk v. Edwards, 626 So.2d 1128, 1132 (La.1993). However, a constitutional limitation on legislative power may either be express or implied. Caddo-Shreveport Sales and Use Tax Comm’n, 97-2233 at 6, 710 So.2d at 779-780; Board of Comm’rs of North Lafourche Conservation Levee and Drainage Dist. v. Bd. of Comm’rs of Atchafalaya Basin Levee Dist., 95-1353, p. 4 (La.1/16/96), 666 So.2d 636, 639. When a constitutional challenge is made, the question is whether the constitution limits the legislature, either expressly or impliedly, from enacting the statute at issue. Board of Dir. of the Indus. Dev. Bd. of the City of Gonzales v. All Taxpayers, Property Owners, 05-2298, p. 14 (La.9/6/06), 938 So.2d 11, 20; World Trade Ctr., 05-0374 at 12, 908 So.2d at 632. The constitution is the supreme law, to which all legislative acts must yield. World Trade Ctr., 05-0374 at 12, 908 So.2d at 632; Caddo-Shreveport Sales and Use Tax Comm’n, 97-2233 at 6, 710 So.2d at 780; Macon v. Costa, 437 So.2d 806, 810 (La.1983). When a statute conflicts with a constitutional provision, the statute must fall. Caddo-Shreveport Sales and Use Tax Comm’n, 97-2233 at 6, 710 So.2d at 780.
Bearing these principles in mind, we turn to an examination of the ordinance’s provisions for collection of delinquent ad valorem taxes on immovables in relation to La. Const. art. VII, § 25. Specifically, we address whether the constitution | ^.prohibits the state and its governmental subdivisions from proceeding in a manner other than a tax sale for the collection of delinquent ad valorem taxes on immovable property. Considering the interrelatedness of the ordinance’s provision of a penalty for collection costs with the ordinance’s provision authorizing suit to collect the delinquent taxes, and the appellate *235 court’s decision declaring the ordinance unconstitutional, we also examine whether the 30% penalty for collection costs violates La. Const, art. VII, § 25.

Home Rule Charter

New Orleans is governed by a home rule charter, which preexisted the 1974 state constitution. City of New Orleans v. Bd. of Comm’rs of the Orleans Levee Dist., 93-0690, p. (La.7/5/94), 640 So.2d 237, 244; Acorn v. City of New Orleans, 377 So.2d 1206, 1211 (La.1979), appeal dismissed, 446 U.S. 961, 100 S.Ct. 2934, 64 L.Ed.2d 1173 (1980). Because the home rule charter existed at the time the 1974 state constitution was adopted, Article VI, section 4 of that constitution grants the City both the power to initiate local legislation and the power of immunity from control by the state legislature. Bd. of Comm’rs of the Orleans Levee Dist., 93-0690 at 4, 7-8, 640 So.2d at 242-243. La. Const. art. VI, § 4 provides:
§ 4. Existing Home Rule Charters and Plans of Government
Section 4. Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions, (emphasis supplied)
Essentially, defendants argue, the City can levy taxes, fees and penalties pursuant to its home rule charter, unless the constitution expressly prohibits such a tax or penalty. Article III, section 3-101 of the Home Rule Charter of the City of New Orleans | ]3provides, in relevant part:
(1) All legislative powers of the City shall be vested in the Council and exercised by it in the- manner and subject to the limitations hereinafter set forth.
(2) The Council shall have the right to levy any and all clásses of taxes, excises, licenses, liens and fees necessary for the proper operation and maintenance of the municipality for' the payment of debt, and for capital improvements that are not expressly prohibited by the Constitution provided that no specific tax or service charge affecting real property or motor vehicles shall be levied unless approved by a majority of the qualified electors voting thereon in an election held for that purpose....
We agree with the defendants that La. Const, art. VI, § 4 authorizes the City to exercise any legislative power within its boundaries that is not inconsistent with the 1974 constitution. Bd. of Comm’rs of Orleans Levee Dist., 93-0690 at 11, 640 So.2d at 245. However, we find' defendants interpret the City’s plenary power too broadly. Defendants call our attention to the language in section 3-101 of the Charter, which provides “[t]he Council shall have the right to levy any and all classes of taxes, ... liens and fees necessary ... that are not expressly prohibited by the Constitution....” Notwithstanding this language in the home rule charter, the municipality’s home rule power is limited, as is the legislature’s, by the constitution, whether that limitation is express or implied. La. Const, art. VI, § 4 does not support the City’s contention that a home rule charter governmental subdivision may initiate local legislation unless expressly prohibited by the constitution. To the contrary, the home rule charter may not be inconsistent with the constitution. La. *236 Const. art. VI, § 4; Bd. of Comm’rs of Orleans Levee Dist., 93-0690 at 11, 640 So.2d at 245.
It is evident that the constitution does not expressly provide tax sales as the ex- ■ elusive means of enforcing ad valorem taxes upon immovable properties and collecting such taxes if delinquent. Nonetheless, this determination does not foreclose our inquiry. Rather, our task is to examine the constitution to determine if 114it implicitly limits the state and its governmental subdivisions to the mechanism of tax sales for collection of delinquent ad valorem taxes upon immovable property.

La. Const. Art. VII, § 25 Tax Sales

The ordinance at issue permits the City to impose a 3% penalty for delinquency, interest at a rate of 1% for each month or portion of a month the tax remains unpaid and if they remain delinquent on April 1 of the year in which they became delinquent, a 30% penalty of the taxes, penalty and interest if it has been referred to an attorney or collection agent for collection. The ordinance also authorizes the City to file suit to foreclose the lien securing payment of the tax. The appellate court found the ordinance to be unconstitutional because it interpreted La. Const, art. VII, § 25(A) as prohibiting the tax collector from filing suit against the taxpayer in the event of nonpayment of taxes.
Defendants, relying upon Slack v. Ray, 26 La. Ann. 674 (1874), Succession of Dupuy, 33 La. Ann. 258 (1881), Succession of Mercier, 42 La. Ann. 1135, 8 So. 732 (1890), and Parker v. S’holders of S. Nat’l Bank, 46 La. Ann. 563, 15 So. 200 (1894), contend that tax sales are not the exclusively constitutional method for collecting delinquent ad valorem taxes on immov-ables and further, the constitution does not bar the imposition of penalties and interest upon delinquent taxes. We first address whether methods, other than tax sales, are constitutionally permitted for the collection of delinquent ad valorem taxes on immov-ables.
La. Const, art. VII, § 25 provides, in relevant part:
§ 25. Tax Sales
Section 25., (A) Tax Sales. (1) There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs’ sales, in the manner provided for h ¿judicial sales. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
(2) If property located in a municipality with a population of more than four hundred fifty thousand persons as of the most recent federal decennial census fails to sell for the minimum required bid in the tax sale, the collector may offer the property for sale at a subsequent sale with no minimum required bid. The proceeds of the sale shall be applied to the taxes, interest, and costs due on the property, and any remaining deficiency shall be eliminated from the tax rolls.
(B) Redemption. (1) The property sold shall be redeemable for three years *237 after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.
We first observe that our earlier constitutions contained articles providing, in almost identical language to that contained within Article VII, § 25, there would be no forfeiture of property for nonpayment of taxes, but for tax sales without suit and after proper notice to the delinquent, and redemption of property sold at tax sales. La. Const. art. X, § 11 (1921); La. Const. art. 233 (1913); La. Const. art. 233 (1898); La. Const. art. 210 (1879). However, the 1868 constitution did not contain these provisions. See La. Const. art. 118 (1868). Thus, tax sales for nonpayment of ad valo-rem property taxes and the right of redemption have been part of Louisiana’s organic law since 1879. Indeed, the delegates to the 1973 Constitutional Convention, discussing the Avant amendment that eventually became Article VII, § 25, observed that it incorporates into the 1974 constitution the identical provisions of La. Const. art. X, § 11 (1921), with two minor deletions. La. Const. Conv.1973 Verbatim Transcripts, Vol. XXV, Day 79, pp. 25-26.
The earliest case that discusses the constitutional provision of tax sales, which made its first appearance in the 1879 constitution, is Mayor v. Heyman, 35 La. Ann. 301 (1883).[5] There, the taxpayer was sued for taxes alleged to be due upon real and personal property. Defendant excepted on the ground that the attempt to collect a tax through suit was prohibited by the constitution. This court agreed, declaring that the payment of taxes could not be enforced by suit. The court further observed the object of the constitutional article was to prevent the oppressive accumulation of costs and to provide a less expensive and more expeditious method of realizing the public 3revenue. See also Mayor v. Williams, 35 La. Ann. 329 (1883)(explaining the constitutional prohibition of suit to collect taxes is express and emphatic).
In State v. Meyer, 41 La. Ann. 436, 6 So. 590 (1889), a subsequent decision determining the constitutionality of an act with regard to La. Const." art. 210 (1879), the court noted that the constitution prohibited the method of collecting property taxes by suit, substituting for it the method of summary expropriation, without suit, to enforce payment. 6 So. at 591. The defendant was assessed on “money loaned on *238 interest, all credits and all bills receivable for money loaned or advanced.” At issue was Act No. 85 of 1888, section 54, which provided:
In all cases where the collector cannot make a seizure of the personal property liable for the tax assessed against it, either because the nature of the |17property assessed, or because the owner or his representative holds it in his possession, or under his control, in such a manner that the tax collector cannot lay hands upon it, and refuses, on demand, to deliver the same to the tax collector, the said tax collector shall have the power, and it is hereby made his duty, to take, in the district court, a summary rule upon the person assessed or his representative, as the case may be, returnable in five days, ... to compel the delivery to him of said property, or of so much thereof, if the same be divisible in kind, as may be necessary to realize at public sale the amount of the taxes, costs, and penalties.
The court found this act constitutional because the proceeding involved was not a suit for taxes or a suit employed as the means of enforcing payment. Id. The statute only authorized the collector to invoke judicial assistance to compel the delinquent to deliver the property assessed in order that the taxes may be enforced by the summary method prescribed by the constitution; the state has no mode of collecting taxes except by seizure and sale of the property assessed and has an absolute right to enforce their payment in that mode. Id., 6 So. at 591-592. If the exercise of this right is illegally obstructed by illegal actions of the tax debtor in concealing and/or withholding the property, the state is clearly entitled to some remedy. Id., 6 So. at 592. While adhering to the constitutional method of collecting taxes without suit, and by direct expropriation of property, the legislature provided this remedy to enable the collector to reach the property in order to conduct a tax sale. Id.
This court’s recognition of the constitutional prohibition of the collection of delinquent ad valorem taxes by suit was established early on with the exception of Succession of Mercier, supra. In that case, we find the majority misinterpreted these earlier decisions to support its holding that judicial proceedings may be resorted to aid in tax collections when a seizure may not prove an adequate or efficient mode of realizing revenue, or when an action by the taxpayer renders seizure inadequate. 8 So. at 732. For this holding, the majority incorrectly extended the holding of Meyer, supra, beyond its support. Meyer held while the constitutional method of collecting |istaxes is not by suit, but by summary seizure and sale of the property without suit, the collector may invoke judicial aid to compel the delinquent taxpayer, who possesses and conceals the property, to produce it in order that the collector may perform his constitutional duty of enforcing the seizure and sale for the payment of the taxes due. Meyer, 6 So. at 592. The proceeding at issue in Meyer was not a suit for taxes, nor was it a suit employed as the means of enforcing payment of taxes. Id., 6 So. at 591. The proceeding authorized by the legislative act was solely for the purpose of reaching and uncovering the property in order that it may be seized and sold. Id., 6 So. at 592. The majority in Mercier was incorrect in holding that seizure and sale was not the exclusive mode provided by La. Const, art. 210 (1879) to enforce payment of taxes.
We do not find defendants’ reliance upon Mercier persuasive to support their contention that La. Const, art. VII, § 25 (1974) does not exclude methods, other than tax sales, for collection of ad valorem *239 taxes. Mercier merely supports the holding of Meyer that, where a taxpayer prevents the collector from seizing and selling the property to enforce payment of taxes, the governmental subdivision is not without recourse to compel the taxpayer to produce the property in order for the tax collector to enforce payment by tax sale, as constitutionally mandated. The Mercier court misconstrued the prior jurisprudence to upset what had been settled law, that payment of taxes could not be enforced by a suit, but only in conformity with Article 210 of the constitution. Mercier, 8 So. at 736 (Fenner, J., dissenting). In Mercier, the property subject to taxes was extant and the inscription remained in force; nothing hindered the collector from proceeding in the exclusive mode provided by the constitution. Id.
Further support for our determination that Mercier incorrectly held the | ^constitution did not restrict the collector to proceeding by sale to collect delinquent taxes can be found in the reasons refusing a rehearing. In these reasons, the court observed Article 210 treats the assessment as a judgment. Mercier, 8 So. at 737. The court noted that proceedings for the assessment and collection of taxes are in many respects similar to judicial proceedings, for which they are regarded as substitutes. Id. The assessment, the record of the delinquent lists, and the tax collector’s sale are the respective equivalents of judgment, seizure, and execution sale. Id. In effect, a delinquent property tax is tantamount to a judgment and seizure, therefore it would be absurd to file a suit to foreclose the lien for a delinquent property tax as provided in the ordinance; it would be the same as filing a second suit after already obtaining a judgment granting the relief sought. “Suit, under the article, is unnecessary, because all of the taxed property of the tax debtor is considered as covered by the assessment, which has the force and effect of a judgment, and is, for the purposes of collection, considered as seized.” Id. Although the Mercier court found the tax collector had the right to oppose the provisional account and tableau filed by the executor of Mercier’s estate because the court determined the property of the succession had been sold and the tax collector could not lay his hands upon it, the court conflated the right of the collector to compel the delinquent to deliver the property for tax sale with an unavailable right to enforce the tax upon property by means other than by tax sale. Because Mercier misinterpreted Meyer and misconstrued Heyman, its holding that tax collectors are not constitutionally restricted to proceeding by tax sale to collect delinquent property taxes is overruled.
Moreover, the drafters of our current constitution, in drafting and placing before the voters Article VII, § 25, presumably were aware that assessment, the record of delinquent lists, and the tax sale are the respective- equivalents of judgment, | anseizure, and execution sale. The Louisiana Law Institute, pursuant to Acts 1946, No. 52, prepared a Projet of a Constitution for the State of Louisiana. In this Projet, with regard to La. Const, art. X, § 11 (1921), the predecessor of our present La. Const, art. VII, § 25, the Law Institute commented upon the prohibition of the forfeiture of property by stating the implications of this provision are explained in the following:
Lands are not forfeited by the nonpayment of taxes. The State, by such omission, acquires no title to them. Taxes, like a judgment of a court of record, are a mere lien upon the land, to be enforced in both instances by a sale, and the title passes, and can pass, by such sale alone. There can be no redemption by the owner until after a sale, for the reason that until that time the *240 title is still in him, and there is nothing to be redeemed. After they are due and before the sale, he may pay the taxes and discharge the lien, but there is in no sense a redemption. The State, or other authority imposing the taxes, may become the purchaser at the sale, but until they are so purchased no title to the land vests in such authority. Until there be a sale, every vestage [sic] of title remains in the individual, and the lands are subject to a mere lien for the taxes. It need not be argued that the sale is in no sense a forfeiture.
3 Projet of a Constitution foe the State op Louisiana with Notes and Studies 200-203 (1954) (quoting Comm’rs of Miami County v. Wan-zop-pe-che, 3 Kan. 3[64, 370-371] (1865)).
At the 1973 Constitutional Convention, during the discussion concerning the adoption of the section which would become Article VII, § 25, the delegates debated whether to adopt the Avant amendment essentially retaining all of the language of La. Const, art. 10, § 11 (1921) or an amendment by Mr. Derbes and others which read:
There shall be no forfeiture of property for nonpayment of taxes. However, the legislature shall provide for the sale and redemption of such property. The period during'which redemption may occur shall be not less than three years from date of adjudication.
La. Const. Conv.1973 Verbatim Transcripts, Vol. XXV, Day 79, pp. 30-31. Mr. Derbes expressed his belief that any methods by which the legislature compelled payment of taxes that did not amount to forfeiture would not be prohibited. Id., p. 33. He was questioned as to whether his amendment would offer more flexibility for the legislature to provide some other method of collection or enforcement of taxes. Mr. | ¾1 Derbes replied that his amendment provides for a great deal of flexibility without destroying the basic premise that property should not be forfeited for nonpayment of taxes. Id.
Opposing this amendment, Mr. Perez expressed that the system has existed for many, many years, and that the people are accustomed to the fact that if they do not pay their taxes, the property will be sold at tax sale, but with a right of redemption. Id., p. 35. The convention rejected the Derbes amendment by a vote of 58-48 after adopting, by a vote of 88-10, the Avant amendment essentially replicating the provision in the 1921 constitution. Id., at pp. 30, 38. Given the long history of this provision in our previous constitutions, the delegates’ rejection of the Derbes amendment in favor of adoption of a provision essentially repheating that found in the 1921 constitution, and the comment by the Law Institute in the Pro-jet, we find La. Const, art. VII, § 25 implicitly prohibits any proceeding other than a tax sale for collection of delinquent ad valorem property taxes. As we observed earlier, because an assessment is tantamount to a judgment and a delinquent tax is equivalent to a seizure, Morder, 8 So. at 737, the ordinance’s provision permitting the City to file suit to foreclose the lien would be an absurdity.
We are not persuaded by defendants’ reliance upon Slack, supra and Dupuy, supra for the premise that the tax collector may use methods other than a tax sale for collecting delinquent ad valorem property taxes. Neither of these decisions concerned the 1879 constitution, which contained the genesis of Article VII, § 25 in the 1974 constitution. The 1868 constitution did not contain language concerning tax sale procedure. See La. Const, art. 118 (1868). The court in Dupuy explicitly declared the 1879 constitution, which went into effect on January 1, 1880, was inappli *241 cable to the municipal taxes levied in December 1879. Thus, the court’s 12aexpression that “[e]ven were it otherwise, it is clear that the summary mode provided by said constitution ... did not necessarily exclude every other mode for the collection of the taxes” is dicta.
Defendants’ reliance upon Parker, swpra is also misplaced. Parker merely holds, as did Meyer, supra, that article 210 of the 1879 constitution did not prohibit legislation compelling the delivery of the property by the delinquent taxpayer so that the tax collector can sell it as authorized by the constitution. Parker, 15 So. at 201.
Having determined, after careful deliberation, the constitution prohibits suit to foreclose the lien or any other proceeding other than a tax sale to collect delinquent ad valorem property taxes, we now turn to examination of the 30% penalty for collection costs, and its constitutionality, vel non.

La. Const, art. VII, § 25 Collection Penalty

The City’s ordinance contains provisions imposing a 3% penalty for delinquency, interest at a rate of 1% for each month the tax is delinquent and an additional penalty of 30% imposed, if still delinquent on April 1 of the year in which the tax becomes delinquent, to defray collections costs if the delinquency has been referred to an attorney or collection agent. New Orleans Code of Ordinances, Ch. 150, art. II, §§ 150-46.2, 150-46.3. The court of appeal determined the 30% penalty was actually a legal fee disguised as a penalty, in the nature of attorney’s fees, for which La. Const. art. VII, § 25(B)(1) does not provide. Transen, 06-1325 at 11-12, 970 So.2d at 8-9. The court further held Article VII, § 25(B)(1) limits the penalty for delinquent ad valorem taxes to 5%. Id., 06-1325 at 12, 970 So.2d 1 at 9.
Initially we must observe that in the court’s role of interpreting legislation, we must be ever mindful of the separation of powers and the deference owed to legislative bodies. Thus, we cannot impose our will upon the people and declare that bathe ordinance enacted by the legislative body for a collection penalty is in actuality an attorney’s fee. The starting point in the interpretation of any statute is the language of the statute itself. First Nat'l Bank of Picayune v. Pearl River Fabricators, 06-2195, p. 17 (La.11/16/07), 971 So.2d 302, 313; Theriot v. Midland Risk Ins. Co., 95-2895, p. 3 (La.5/20/97), 694 So.2d 184, 186. “The words of a law must be given their generally prevailing meaning.” La. Civ.Code art. 11; Cleco Evangeline v. Louisiana Tax Comm’n., 01-2162, p. 5 (La.4/3/02), 813 So.2d 351, 354; Backhus v. Transit Cas. Co., 549 So.2d 283, 289 (La.1989). The City passed legislation to impose a penalty for collection costs of delinquent ad valorem taxes. It is well settled that a statute should be construed according to the fair import of its words taken in their usual sense. Cleco Evangeline, 01-2162 at 5, 813 So.2d at 354; State v. Evans, 214 La. 472, 38 So.2d 140, 142 (1948).
Because we have held that the constitution prohibits any method other than a tax sale to collect delinquent ad valorem taxes, the section of the ordinance imposing an additional penalty for collection costs must fall. The method for collection of delinquent ad valorem property taxes is fully set forth in La. Const, art. VII, § 25(A)(1) and La.Rev.Stat. 47:2180, which provide that the tax collector shall notify the taxpayer, by certified mail or personal or domiciliary service, of the delinquency and impending tax sale. Accordingly, collection by an attorney and/or a collection agency is unnecessary and prohibited. Thus, Section 150^-46.3 of the New Orleans Code of Ordinances must fall, to the extent *242 it imposes an additional penalty for collection of delinquent ad valorem property taxes on immovables.
That leaves to be addressed the court of appeal’s determination that La. Const. art. VII, § 25(B)(1) limits the penalty charged for delinquent ad valorem taxes to five percent. This language, which provides for redemption of the property sold at tax lósale “by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption” only applies to what must be paid to redeem the property. Nonetheless, in delineating the mandatory provisions for tax sales, the constitution provides “the collector shall sell ... for the amount of the taxes, interest, and costs.” La. Const. art. VII, § 25(A)(1). It is long established that constitutional articles are construed by the same canons of interpretation applicable to statutes. Sumrall, 98-1587 at 4, 728 So.2d at 1258; State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 486 (1949). Because the article specifically enumerates a series of things, the omission of “penalties”, which could have easily been included in the article, is deemed intentional under the settled doctrine of statutory construction, Expressio Unius est Exclusio Alterius. International Paper Co. v. Hilton, 07-0290, p. 19 (La.10/16/07), 966 So.2d 545, 558. Thus, if the governmental subdivision were to impose penalties upon delinquent ad valorem taxes, it would not be able to recoup these penalties at a tax sale, as the sale must be for the amount of the taxes, interest and costs. A fortiori, the “price given” at a tax sale is for the taxes, interest and costs, and the five percent penalty and the continuing interest rate of one percent must be paid in addition to the price given in order to redeem the property. The constitution mandates a 5% penalty only for redemption, and where ad valorem taxes are delinquent, permits the governmental subdivision to sell the property only for taxes, interest and costs. Thus, Section 150-46.2(a) of the New Orleans Code of Ordinances must fall, to the extent it imposes a penalty upon delinquent ad valo-rem property taxes on immovables, as these penalties are not collectible at a tax sale.
CONCLUSION
In conclusion, we find Ordinance No. 18637, codified in the New Orleans Code | gsof Ordinances, Chapter 150, Article II, §§ 150-46.1 through 150-46.6 unconstitutional with respect to any provisions that permit the City to place delinquent ad valorem property taxes on immovables for collection with an attorney or agent and/or that permit the City to proceed in any manner other than by the constitutionally mandated manner of tax sales to collect delinquent ad valorem property taxes on immovables. Article VII, § 25(A) of the Louisiana Constitution prohibits methods or proceedings other than tax sales to collect delinquent ad valorem property taxes. We further find the Ordinance, as codified, unconstitutional to the extent it imposes penalties, other than interest, upon delinquent ad valorem property taxes on immovables. The constitutional provision relating to property taxation permits the governmental subdivision to impose only the taxes, interest and costs in proceeding to sell the property for the delinquent ad valorem taxes.
DECREE
For the foregoing reasons, we affirm in part the judgment of the court of appeal. We hold Ordinance No. 18637, codified in the New Orleans Code of Ordinances, Chapter 150, Article II, §§ 150-46.1 through 150^16.6 unconstitutional with re *243 spect to any provisions that permit the City to proceed in any manner other than by the constitutionally mandated manner of tax sales to collect delinquent ad valo-rem property taxes on immovables and that permit the City to impose penalties, other than interest, upon delinquent ad valorem property taxes on immovables. The remainder of the court of appeal judgment is vacated, and this matter remanded to the trial court for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

. Section 150-46.3 was subsequently amended by Ordinance Number 20957.

. The law firm is now known as Linebarger, Groggan, Blair, Pena & Sampson, L.L.P.

. Plaintiffs also filed a second amending petition to add Fransen & Hardin, A.P.L.C., as an additional plaintiff because of the assessment of interest, penalty and collection penalty on the business’s personal property taxes. From the record, this tax appears to be assessed on movables; it states it is upon "furnishings, machinery, all other.” Because the briefs to the court of appeal and to this court, as well as argument, were restricted to the application of the ordinance to ad valorem taxes on immovable property only, we express no opinion as to the constitutionality, vel non, of the ordinance with regard to ad valorem taxes assessed upon movables.

. We are aware of defendants’ argument that the penalties may also be enforced by tax sales, and not solely by the suit provisions of the ordinance. Nevertheless, the ordinance allows enforcement by suit, which plaintiffs aver violates La. Const, art. VII, § 25. This is addressed infra.

. La. Const, art. 210 (1879) provided:
There shall be no forfeiture of property for the non-payment of taxes, State, levee district, parochial or municipal, but at the expiration of the tax year in which they are due the collector shall, without suit, and after giving notice to the delinquent in the manner to be provided by law (which shall not be by publication except in case of unknown owner) advertise for sale the property on which the taxes are due in the manner provided for judicial sales, and on the day of sale he shall sell such portion of the property as the debtor shall point out, and in case the debtor shall not point out sufficient property, the collect shall at once and without further delay sell the least quantity of property which any bidder will buy for the amount of the taxes, interest and costs. The sale shall be without appraisement, and the property sold shall be redeemable at any time for the space.of one year, by paying the price given, with twenty per cent and costs added. No sale of property for taxes shall- be annulled for any informality in the proceedings until the price paid, with ten per cent interest be tendered to the purchaser. All deeds of sale made, or that may be made, by collectors of taxes, shall be received by courts in evidence as prima facie valid sales.
La. Const, art. 218 (1879) provided:
All the articles and provisions of this constitution regulating and relating to the collection of State taxes and tax sales shall also apply to and regulate the collection of parish, district and municipal taxes.