ECLECTIC INVESTMENT
PARTNERS, LP

VERSUS

CITY OF NEW ORLEANS AND
NORMAN WHITE, DIRECTOR
OF FINANCE AND EX
OFFICIO TAX COLLECTOR

\*

\*

\*

\*

\*

\* \* \* \* \* \* \*

NO. 2019-CA-0895

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA

**DYSART, J., DISSENTS.**

I recognize that this Court's recent decision of *Harrier Enterprises, LLC v. Imbornone*, 19-0613 (La. App. 4 Cir. 1/29/20), 2020 WL 486804, --- So3d ----, addressed the very issues raised in this appeal and, in fact, is the first reported decision to address those issues. In my view, however, the *Harrier* decision, and the majority in the instant matter, have applied the tax sale statutes in a manner inconsistent with the underlying intent of these laws. While ordinarily the law of a circuit is binding on that circuit, this Court has authority to refer this case to an en banc panel to review the propriety of the *Harrier* decision, and determine whether it should be overruled. Uniform Rules for the Courts of Appeal, Rule 1-5, provides that, "[w]hen authorized by law, or when the court deems it necessary to promote justice. . . , the court may sit in panels of more than 3 judges or en banc." *See also*, *State v. Wright*, 483 So.2d 1104, 1105 (La. App. 4 Cir. 1986)("this court's internal rule . . . prohibits handing down a decision that would be inconsistent with a prior decision, and requires that it first be referred to the court en banc to decide whether the panel may overrule or must follow the earlier decision); *Bridgett v. Odeco*, Inc., 93-1536, p.8 (La. App. 4 Cir. 12/15/94), 646 So. 2d 1249, 1254 ("[i]n accordance with the internal rules of this court, this proposal to overrule a prior decision of this court was submitted to each member of the court); *State v. Dean*, 588 So. 2d 708,

709, n.1 (La. Ct. App. 1991)(rehearing granted "in accordance with the internal rules of the court this opinion which overrules a previous opinion of this court was considered by the court en banc); *Fleckinger v. Smith*, 319 So.2d 881, 889, n.4 (La. App. 4 Cir. 1975)(rehearing granted so that the matter could be "submitted it to the Court en banc pursuant to [the] internal rules because of an apparent conflict between [the] original opinion and the previous decision of this Court").

The issue in this matter is whether a tax sale purchaser, who purchases property at a tax sale for the delinquent taxes for which the sale was invoked, can be required to pay other delinquent taxes which were not included in the tax sale (and could not have been included in that sale). In my opinion, under the tax sale laws, the tax sale purchaser owes only those taxes which were included in the tax sale; the tax selling authority cannot require it to pay those taxes for which it could no longer invoke a tax sale. Accordingly, I would find that the City of New Orleans improperly included taxes delinquent for more than three years on Eclectic's tax bill. As such, the trial court erred in failing to grant Eclectic's petition for a writ of mandamus.

"A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. . . ." La. C.C.P. art. 3862(A). La. C.C.P. art. 3863 then provides that "[a] writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law." A "'ministerial duty' is one in which no element of discretion is left to the public officer, in other words, a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law.'" *Constr. Diva, L.L.C. v. New Orleans Aviation Bd.*, 16-0566, pp. 12-13 (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1037, writ denied, 17-0083 (La. 2/24/17), 216 So.3d 59, quoting *Landis Const. Co., LLC v. Reg'l Transit Auth.*, 15-0854, p. 10 (La. App. 4 Cir. 5/25/16), 195 So.3d 598, 605. La. C.C.P. art. 3865

indicates that, when a petition for a writ of mandamus is filed, "the court shall order the issuance of an alternative writ directing the defendant to perform the act demanded or to show cause to the contrary."

A taxing authority may only issue a bill for taxes actually owed and may not seek the payment of taxes to which a taxpayer is not liable, as is the case here. Thus, I would find the removal of improper taxes on an ad valorem tax bill to be ministerial in nature. *See*, *e.g.*, *Goux v. St. Tammany Par. Gov't*, 13-1387 (La. App. 1 Cir. 10/24/14), 156 So.3d 714, 724 (the Parish's failure to correct an error in a zoning map "'is a simple, definite fix of an undisputed ministerial error in mapping [for which a] writ of mandamus was appropriate . . . as the requested action . . . was simply a ministerial duty. . . .'"); *Gootee Const., Inc. v. Atkins*, 15-0376, p. 4 (La. App. 4 Cir. 11/4/15), 178 So.3d 629, 632 ("[m]andamus has been held to be the proper remedy for compelling a recorder of mortgages to cancel or erase an illegal or unauthorized inscription")(internal citations omitted); *State ex rel. Coltraro v. City of New Orleans*, 1 Pelt. 155 (La. Ct. App. 1918)(mandamus was appropriate to compel the City to accept payment of taxes on real estate).

Tax sales are authorized by Louisiana Constitution Article VII, § 25(A)(1) which provides, in pertinent part, that "[t]here shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, **shall** advertise the sale of the property on which the taxes are due." (Emphasis added). The use of the word "shall" indicates the mandatory nature of this article. *See* La. R.S. 1:3 ("[t]he word "shall" is mandatory and the word "may" is permissive."); *Oubre v. Louisiana Citizens Fair Plan*, 11-0097, p. 12 (La. 12/16/11), 79 So.3d 987, 997. The Louisiana Supreme Court has made clear that the only method by which delinquent ad valorem taxes may be collected is through a tax sale. *See Jackson v. City of New Orleans,* 12-2742, p. 12 (La.

1/28/14), 144 So.3d 876, 887 (quoting *Fransen v. City of New Orleans*, 08-0076 (La. 7/1/08), 988 So.2d 225, 241 ("the constitution prohibits any method other than a tax sale to collect delinquent ad valorem taxes . . .")). *See also*, *Mooring Tax Asset Grp., L.L.C. v. James*, 14-0109, p. 12 (La. 12/9/14), 156 So.3d 1143, 1151. ("collection of delinquent real estate taxes can only be collected by tax sale of the property, not a personal suit against the property owner.").

Thus, La. Const. art. 7 § 25 imposes a mandatory duty upon a tax collector (here, the City) to seek redress for recalcitrant taxpayers by seizing and selling their property, the sole method by which it may do so.

This obligation is not without limitations. A taxing authority may only proceed to a tax sale for ad valorem taxes which have been delinquent for no more than three years. La. R.S. 47:2126 requires each assessor to "deliver to the appropriate tax collector the tax roll for the year in which the taxes are collectible by November fifteenth of each calendar year." Under La. R.S. 47:1993 G, "[f]rom the day the [assessment] roll is filed in the recorder's office, it shall act as a lien upon each specific piece of real estate thereon assessed," which lien "is subject to a legal mortgage after the thirty-first day of December of the current year for the payment of taxes due on it." Importantly, "[o]nce three years after December thirty-first of the year in which ad valorem taxes are due have passed, . . . **no tax sale shall be conducted with regard to such taxes.**" La. R.S. 47:2131. (Emphasis added).

The City contends that, because the Louisiana Constitution indicates that real property taxes do not prescribe,[1] and because the City had "valid tax liens recorded on the subject property," the delinquent taxes can be collected from a tax sale purchaser. I find this argument to lack merit.

---

[1] La. Const. art. VII, § 16 states that "[t]axes, except real property taxes. . . shall prescribe in three years after the thirty-first day of December in the year in which they are due. . . ." The *Harrier* decision makes note of this provision as well.

A plain reading of La. R.S. 47:2131 indicates that a taxing authority may only conduct a tax sale for the non-payment of taxes for the three-year period prior to the tax sale. Any other delinquent taxes are simply uncollectible at that point by the taxing authority from the original ad valorem tax debtor. I find no authority for passing on that uncollectible ad valorem tax debt to a subsequent tax sale purchaser.

It is clear that a taxing authority's failure to timely institute a tax sale results in the legal consequence that taxes more than three years delinquent cannot not be included in the tax sale. It is, thus, incumbent upon a taxing authority (here, the City) to **timely** comply with its obligation under La. Const. art. 7 § 25 to "advertise the sale of the property on which the taxes are due." Its failure to do so should not result in a third party's bearing the adverse consequences of its neglect. To hold otherwise would allow a taxing authority, careless in timely instituting tax sales (or realizing that a repeatedly delinquent taxpayer will not pay taxes) to wait indefinitely to provoke a tax sale, and then recoup all of the outstanding taxes from a tax sale purchaser. This could lead to the absurd consequence of a tax sale purchaser paying many years, perhaps decades or more, of delinquent taxes. Accepting the City's argument, the result would be to render La. R.S. 47:2131, and the limitations set forth therein, meaningless. The mandate set forth in La. Const. art. VII, § 25(A)(1), to advertise a property for sale when taxes are overdue for a year, would likewise be rendered meaningless, and a taxing authority could simply proceed with a tax sale for all outstanding ad valorem taxes at any time.

In my view, a finding that a tax sale purchaser cannot be required to pay delinquent taxes not expressly included in the tax sale (*i.e.*, those taxes which are more than three years delinquent) is supported by the statutory scheme for tax sales.

After the period of redemption has elapsed following a tax sale,[2] "the tax sale purchaser may file with the recorder of mortgages an affidavit indicating how the tax sale parties whose interest the purchaser intends to be terminated were identified, how the address of each tax sale party was obtained, how the notice was sent, the results of sending the notice, and the dates of publication." La. R.S. 47:2157 D. La. R.S. 47:2157 further provides:

> The filing of the affidavit provided in Subsection D of this Section with the recorder of mortgages of the parish in which the property is located **shall** operate as a cancellation, termination, release, or erasure of record of all statutory impositions due and owing to the political subdivision prior to the recordation of the tax sale certificate, and of all interests, liens, mortgages, privileges, and other encumbrances recorded against the property and listed in the affidavit. Governmental liens and statutory impositions due to other political subdivisions other than the selling political subdivision shall not be canceled or terminated. The recorder of mortgages shall index the affidavit only under the name of the tax debtor and current owner.

La. R.S. 47:2157 E. (Emphasis added). Notably, "statutory impositions" are defined as "ad valorem taxes and any imposition in addition to ad valorem taxes that are included on the tax bill sent to the tax debtor." La. R.S. 47:2122 (14).

Thus, under La. R.S. 47:2157 E, two sets of encumbrances are specifically and effectively canceled with the filing of the affidavit – (1) "all statutory impositions" (defined as ad valorem taxes, "owed . . . prior to" the tax certificate's filing) and other impositions included in the tax debtor's bill; and (2) all other interests and encumbrances listed in the affidavit. The statute, thus, expressly provides that the filing of the affidavit "eras[es]" all prior ad valorem taxes. It does not, as the City suggests, erase only those for which the tax sale was

---

[2] The Louisiana Constitution provides the following redemptive period:

> The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.

La. Const. art. VII, § 25(B)(1).

conducted. Given that La. R.S. 47:2131 bars tax sales for ad valorem taxes delinquent for more than three years, a taxing authority has no legal authority for the inclusion of older ad valorem taxes in a tax sale.

Notably, the Legislature did make exceptions for certain encumbrances which are not canceled even with the filing of an affidavit. La. R.S. 47:2157 E specifically provides that liens and privileges of governmental entities, *other than the taxing authority invoking the tax sale*, are not canceled. Clearly, this evidences a legislative intent, and the necessary corollary, that the *selling* tax authority's liens and privileges are canceled by the affidavit's filing. After the tax sale, a tax sale purchaser is liable for valorem taxes *subsequently* accruing on the property. *See* La. R.S. 47:2161 ("From the date of filing a tax sale certificate selling tax sale title to a tax sale purchaser, all taxes on the property shall, after that date, be assessed to and paid by the tax sale purchaser").

I likewise find no merit to the City's argument that the 2008 Comment (f) to La. R.S. 47:2157 supports its position that EIP is liable for those taxes not included in the tax sale and which were delinquent for more than three years.[3] The Comment states, in pertinent part:

> Subsection E provides that the filing of the affidavit cancels all statutory impositions due prior to the recordation of the tax sale certificate since the purchase price paid was the amount of those statutory impositions of the taxing authority conducting the tax sales. It does not, however, cancel statutory impositions of other taxing districts which conduct separate tax sales. See R.S. 47:2160. Other governmental liens, such as condemnation liens, weed liens, etc., that were not included as statutory impositions are not cancelled.

This Comment, in fact, reinforces the finding that all statutory impositions are, indeed, canceled by the filing of the affidavit pursuant to La. R.S. 47:2157 E.

---

[3] The *Harrier* Court relied, in part, on this comment in determining that "the purpose of the provision allowing for the cancellation of statutory impositions by affidavit was to eliminate only those prior encumbrances that were actually satisfied through the proceeds of the tax sale" *Harrier*, p. 4 (La. App. 4 Cir. 1/29/20), --- So.3d ----,----, 2020 WL 486804 at *5

While the Comment simply explains the rationale behind the statute, it definitively indicates that the affidavit "cancels all" outstanding statutory impositions (*i.e.*, ad valorem taxes), and those other encumbrances (non-statutory impositions) included in the affidavit.  As the Comment illustrates, the affidavit can include non-statutory impositions which are canceled, if listed in the affidavit; examples include weed liens, and condemnation liens.

Accordingly, for these reasons, I would find that the City improperly included in Eclectic's tax bill taxes for which it is not responsible.  In my view, this finding advances several of the purposes for which the tax sale legislation was enacted, including to encourage "the payment and efficient collection of property taxes," La. R.S. 47:2121 A(2), and to encourage "the return to commerce of tax sale and adjudicated properties." La. R.S. 47:2121 A(5).  I would reverse the trial court's judgment and grant the request for a writ of mandamus.