No. 10,210.

SUCCESSION OF SAMUEL STEWART. ON RULE TO CANCEL TAXES, TAX LIENS AND PRIVILEGES OF THE CITY OF NEW ORLEANS.

Act 96 of 1877, Sections 36 and 102, apply to tax privileges in favor of the City of New Orleans as well as to State and parish taxes for the years 1881, 1882 and 1883. Said Act is constitutional, and its title is in accordance with Article 116 of the Constitution, of 1868.

Section 36 of said Act applies only to the lien, pledge and privilege; the tax remains due notwithstanding the prescription of the lien and privilege.

Succession of Samuel Stewart.

A PPEAL from the Civil District Court for the Parish of Orleans.
  *Tissot*, J.

*Horace L. Dufour* for Plaintiff and Appellee :

1. The Constitution intended that all matters of taxation, whether State, parochial or municipal, should be on the same footing. See Arts. 202, 203, 210, 218.
2. If the revenue states of 1880 and 1882, apply to city taxation prescription has accrued.
3. If not, Act 96 of 1877 governs, and all city taxes and liens from 1877 are prescribed by three years.
4. If neither the revenue Acts from 1880, nor act 96 of 1877 be applicable, there is no law giving privileges for city taxes, section 20 of the City Charter of 1870, having been repealed. 36 Ann. 765 ; 39 Ann. 124 ; Church Wardens vs. Houston (Court of Appeals).
5. The presumption is in favor of the constitutionality of a law. 1 Bouvier 337 ; Louque's Dig. p. 127.
6. The city is equitably estopped from disclaiming the burden after accepting the benefit of a statute.

*W. B. Sommerville*, Assistant City Attorney, for Defendant and Appellant:

1. Acts 77 of 1880 and 96 of 1882, do not apply to the City of New Orleans, except in so far as Act 119 of 1882 makes them applicable. City vs. Wood, 34 Ann. 732.
2. Act 119 of 1882 is an enabling act, putting Articles 203 and 218 or the Constitution into effect. Alexandria vs. Heyman, 35 Ann. 301, and Alexandria vs. Williams, ibid, 329.
3. It is not an act of prescription.
4. Prescription is not a mode or manner of collecting taxes or any other class of obligations.
5. The manner and mode of collecting implies action on the part of the collector, whereby prescription implies inaction.
6. "Prescription is a manner of acquiring the ownership of property, or discharging debts by the effect of time, and under the conditions regulated by law."
7. The essence of prescription is that the party who invokes it as a remedy thereby acquires the ownership of property, or is thereby discharged from a debt or obligation." Ashley vs. Ashley, 10 Ann.
8. Laws of prescriptions are established for the public good, and not for the benefit of debtors ; they are in derogation of individual rights.
9. Where a term of prescription is not positively and definitely fixed it will not be implied.
10. There being no law prescribing taxes of the City of New Orleans, a rehearing of this case should not be granted.

*Geo. L. Bright* and *James C. Moïse, Amici Curiæ.*

The opinion of the Court was delivered by

McEnery, J.   Plaintiffs, the heirs of Samuel Stewart, proceeded by rule against the City of New Orleans and the Recorder of Mortgages to compel the cancellation and erasure of taxes, tax liens and privileges for the years 1880, 1882, 1883.

They rely upon the provisions of Section 24 of Act 77 of 1880, of Section 34 of Act 96 of 1882, and 98 of 1886.   And if these several laws do not apply, they rely upon Act 96 of 1877, section 36.

The city contends that taxes, etc., tax liens and privileges are impre-
scriptible under Section 20 of Article No. 7 of the E. S. of 1870.

In the case of the City of New Orleans vs. Wood, 34 Ann. 732, it was
held that Act 77 of 1880 did not apply to the City of New Orleans; that
the Convention which framed the Constitution of 1879 did not intend to
alter, nullify or abolish the mode of collecting municipal taxes, then in
existence, by Articles 210, 211 of the Constitution, without the necessary
legislation to carry into effect and make operative said articles. Act 96
of 1882, in its title and text, is almost identical with Act 77 of 1880. In
both acts the language relating to the prescription of tax liens and privi-
leges is the same, with the exception in the former act, the time within
which the privilege and lien shall prescribe is fixed at five years. That
the act of 1882 applies to the collection of State taxes, and not to the
collection of the taxes of the City of New Orleans, is clearly deducible
from sections 44 and 52, providing for the sale of movable and immov-
able property. In both sections the form of sale is: "The State of
Louisiana vs. Delinquent Tax Debtor." All the provisions of said act
relate to the assessment and collection of State taxes, and section 34 of
said act, regulating the prescription of tax privileges, liens and mort-
gage, applies to those in favor of the State. 34 Ann. 732.

It is contended by plaintiffs that Act 119 of 1882 places municipal cor-
porations on the same footing as the State, and that existing laws relat-
ing to the prescription of State taxes also apply to and regulate munici-
pal taxes.

This act regulates the mode, manners and method of collecting parish
and municipal taxes by extending the provisions of Act 96 of 1882, so
far as it relates to assessments, notices, and sales, and the time in which
they shall be made, to subordinate political corporations. Its purpose
was to carry into effect Article 218 of the Constitution, thus regulating,
under existing State laws, the mode of procedure in the enforcement of
the collection of parish and municipal taxes.

The case of Mayor vs. Hayman, 35 Ann. 301, does not support the
position assumed by the plaintiffs. The only question before the court,
in that case, was whether the tax due the City of Alexandria could be
collected by suit or under the provisions of Act 96 of 1882.

This court said, in relation to that contention: "  *   *   the pay-
ment of taxes, whether due to the State or parish, or to incorporated
villages, towns or the city, can not be enforced by a suit, but only in the
mode provided by the Act of July 5, 1882."

In the case of Saloy vs. Woods, cited by plaintiff's counsel, the ques-
tion raised in the instant case does not seem to have been presented or

discussed. The court decided the question upon the pleadings and the state of facts presented. The question presented was whether the institution of a suit in 1882 interrupted the prescription of taxes due from 1882 to 1887. Act No. 26 of 1886 is the only law enacted since the adoption of the Constitution of 1879, which fixes the period in which State, parish and municipal tax mortgages, liens and privileges shall prescribe. It provides in direct terms for the future, and, therefore, does not affect the question under consideration. 39 Ann. 124.

Section 20 of the City Charter of 1870, which, it is alleged, renders the city taxes imprescriptible, was repealed by Act 96 of 1877.

In the case of Davidson vs. Lindop, this court indicated its views on this question in the following language: "Under this law the tax privileges of the City of New Orleans were practically imprescriptible. It remained unaffected by any subsequent legislation until Act 96 of 1877. Sections 36 and 102 of that act, taken together, leave the impression that they were intended to apply to tax privileges in favor of the City of New Orleans as well as to others. But they manifestly apply only to future taxes."

On a careful review of this act and subsequent legislation, we are satisfied that our views in that case were correct and that Act 97 of 1877 regulated the assessment, collection and prescription of State, parish and municipal tax privileges, pledges and liens and applies to city taxes assessed in 1880, 1882, 1883.

The constitutionality of the act is attacked by the city because in the title of the act there is no special mention made of the City of New Orleans in connection with the language of said title relating to the prescription of tax privileges.

The title fully covers all that is contained in the body of the act.

The title of the act recites that it is a law for regulating the mode of assessing and collecting taxes throughout the State, and recites also "the limitation for license, taxes and assessment and the appointment of assessors for each parish." It was not necessary to mention by name each political subdivision in the State. The act was passed and became a law in conformity to Article 114 of the Constitution of 1868.

It is argued by plaintiffs that Section 36 of Act 96 of 1877 applies to the tax as well as the privilege and pledge. The text of the section, in positive language, justifies an opposite interpretation. Counsel for plaintiffs rely, for the interpretation of said text, upon the case of Reed vs. Creditors, 39 Ann. 115. In the reported opinion language on page 124 is as follows: "But in as much as the taxes asserted in the collector's opposition are only those of 1869, 1875, 1876, 1877 and 1878,

those only of the last two years are prescriptible under Act 96 of 1877; but as we have seen, the mortgage is unaffected by it."

The written opinion, as rendered by the court, is as follows: "But in as much as the taxes asserted in the tax collector's opposition are only those of 1869, 1875, 1876, 1877, 1878, the PRIVILEGES SECURING only those of the last two years are prescriptible under Act 96 of 1877; but as we have seen, the mortgage securing them is unaffected thereby."

We, therefore, conclude that the lien, privilege and pledge resulting from the inscription of the taxes due the City of New Orleans from the taxes of 1880 and 1882 are prescribed, but that the taxes of 1880 and 1882 are still due said city, which remains an ordinary creditor for the amounts thereof and entitled to be paid accordingly.

The judgment appealed from is amended, rejecting plaintiff's demand for the annullment of the taxes due said City of New Orleans for the years 1880 and 1882, and in other respects it is affirmed, plaintiff to pay costs of appeal.

. CONCURRING OPINION.

WATKINS, J. This is a proceeding by rule on the part of the succession representatives, for the cancellation of the inscriptions of the liens and privileges securing certain city taxes assessed for the years 1880, 1882 and 1883. These taxes were presumably assessed under and in pursuance of Act 77 of 1880 and Act 96 of 1882. The ground on which it is claimed that these inscriptions should be erased is that the tax liens and privileges securing same are prescribed. In neither of those acts is there any reference to city, or municipal taxes, *eo nomine*, and hence the city's counsel argues that the period of prescription therein prescribed is not applicable to them. But, conceding that this is true, for the purpose of the argument only, counsel for the succession contends that the terms of section 36 of Act 96 of 1877 are broad enough to cover municipal taxes, and that more than the prescriptible length of time has elapsed, and they are prescribed thereunder.

That section is in these words, viz: "That from the filing of the assessment rolls in the office of the Recorder, as provided in this Act, the property therein mentioned shall be affected with a lien, privilege, and rights of pledge, which shall rank all other privileges, and exist, without further registering, until the payment of the tax; the lien, privilege and rights of pledge to be in favor of the State for State taxes, the parish for parochial taxes, and the municipalities for municipal taxes; and such rights shall be concurrent for all said taxes; *provided*, that the privilege and rights of pledge be not considered as lasting for a longer period than three years."

This statute undoubtedly embraces municipal taxes, and the privilege and rights of pledge securing them is barred by the lapse of three years. This prescription is clearly applicable to all city taxes that were assessed under and in pursuance of *that* law. The only taxes that were assessed under it were those of 1877, 1878 and 1879. When the Constitution of 1879 was adopted, and the ordinance for the relief of delinquent tax payers appended thereto as a supplement, all taxes that were " due the State or any political corporation therein " were denominated " delinquent taxes " and dealt with as therein specified. The Constitution provided different and more specific rules in relation to " revenue and taxation " than had thitherto existed. It provided among other things that " the tax shall be designated by the year in which it is collectible, and the tax on movable property shall be collected in the year in which the assessment is made." Art. 211.

In pursuance of the provisions of this Constitution, Act 77 of 1880 was adopted by the Legislature as the general revenue law of that year. In order to assure perfect harmony between the Constitution and the ordinance for the relief of delinquent tax payers, it was enacted in section 5 of that statute, as follows: " That the *assessments* of State and parish taxes made in the year 1879 are *suspended by the assessment to be made in the year 1880 under this Act*, and that the assessments made under this Act shall constitute the assessments for all parish taxes collectable in the year 1880 ; and that *no State or parish taxes shall be collected on the assessments made in the year* 1879."

Section 6 provides " that all taxes shall be collected in the calendar year in which the assessment thereof is made, and they shall be designated as ' the taxes of the year 1880,' and of each subsequent year, accordingly as they are collectible," etc. This legislation was absolutely necessary, because all State taxes assessed in years anterior to the adoption of the Constitution are not collectible until the following year ; and had not the assessment of 1879 been *suspended*, there would have existed the anomaly of one tax assessed in 1879 falling due and made collectible in 1880, and another assessed and collectible in 1880 ; one assessed under Act 96 of 1877, and the other under Act 77 of 1880 ; one a " delinquent tax " *in nomine*, and the other a " current tax."

This much of the legislation was necessary to be recited for the purpose of making very plain the distinction that was established by the organic law, between " current and " delinquent taxes."

Of course, prior statutes were not abolished, or entirely repealed by the Constitution or Ordinance ; for, had this been done, " delinquent taxes " would have been extinguished and the ordinance itself rendered

inoperative. But the effect of such laws was limited to the taxes that were assessed under them; and those subsequently assessed are controlled by laws enacted in pursuance of the provisions of the Constitution. Hence, the provisions of Act 96 of 1877 are inapplicable to " current taxes," such as those under present consideration.

But, in order to still further enforce this view, let us instance that section of the act which provides security for the taxes of 1880 and 1881. It is as follows: " That from the day the said tax roll is filed in the mortgage office, each specific piece of real estate thereon assessed shall be subject to a *legal mortgage* for the payment of the tax due on it, but not for any other tax, which *mortgage* shall prime and outrank all *other* mortgages, privileges, liens, encumbrances, or preferences, except tax rolls of previous years. All tax mortgages and tax privileges shall be prescribed by three years from the date of the filing of the tax roll, etc." Section 24 of Act 77 of 1880.

This revenue law does not provide that there shall be *either lien, privilege* or *pledge* for the security of such taxes as shall be thereunder assessed.

The revenue law of 1882 follows the text of that of 1880, just quoted, *ipsissimis verbis*, in respect of the security; but, in reference to prescription, this language is employed, viz:

" All *taxes*, tax mortgages and tax privileges shall be prescribed by *five* years from the date of filing the tax roll."

It is obvious, that the only security there is for the taxes in controversy, is a legal mortgage, for it cannot be plausibly contended that the "lien, privilege and right of pledge" accorded by the law of 1877, was imported, tacitly and without the sanction of the Legislature, into the Acts of 1880 and 1882, and secure the taxes assessed thereunder.

Now, in Jackson vs. Recorder, 34 Ann. 178, it was held that the prescription announced in Act 96 of 1877 " did not affect the mortgages by which (taxes) were secured." It therefore follows, as an irresistible conclusion, that said act does not affect the legal mortgage securing taxes assessed under the law of 1880 or 1882, such as those in suit; and in as much as they are not secured by any lien, privilege and rights of pledge, as provided by the revenue law of 1887, the prescription therein accorded does not affect them. Hence it was unnecessary for the Legislature to formally repeal that act, or, in terms, to alter the period of prescription therein provided for.

By referring to the repealing clause of the law of 1880, it will be seen that it was specially guarded in its terms. Thus: "That the liens, * * * and those parts of all laws on the subject of the levy, assess-

ment and collection of State taxes, heretofore enacted, which are *in conflict with the Constitution* of this State, or are inconsistent with, or superseded by, or contrary to, or in conflict with the provisions of this act, be and the same are repealed, etc." Section 53 of Act 77 of 1880."

The manifest purpose was to carefully restrain revenue laws within the provisions of the Constitution, and not to interfere with the collectibility of taxes assessed under *anterior* laws.

Having ascertained that the provisions of Act 96 of 1877 are not applicable to the taxes under discussion — conceding *arguendo* that the Acts of 1880 and 1882 embrace city, or municipal taxes — let us now consider the question, as an original one, whether those acts embrace such taxes, and whether those in contestation were assessed thereunder and are governed by the prescription therein established.

Section 7 of Act 77 of 1880 directs the Board of Assessors of the Parish of Orleans to "furnish the City of New Orleans * * with a complete copy of the (State) assessment rolls." Section 21 provides "that if there be any incorporated village, town or city in any parish, the lists of property therein shall be taken up *separately* by the assessor, etc."

The provisions of sections 7 and 26 of Act 96 of 1882, are almost identical with those just quoted from the law of 1880.

Now it happens that the Parish of Orleans and the City of New Orleans are identical in area, population, and assessable property, and hence it is only necessary for the completion of the municipal assessment that the levy made by the City Council be extended on the State assessment roll furnished by the Board of State Assessors.

By this means the provisions of Article 218 of the Constitution are carried into effect. They are as follows:

"All the articles and provisions of this Constitution, and relating to the collection of State taxes and tax sales, shall also apply to the collection of parish, district and municipal taxes."

Article 202 provides that "the taxing power may be exercised by the General Assembly for State purposes, and by parishes and municipal corporations, under the authority of the General Assembly, for parish and municipal purposes."

The conclusion is, likewise, irresistible that the revenue laws of 1880 and 1882 embrace and provide for municipal taxes, and that these provisions cover and control the levy, assessment, and prescriptions of the taxes in dispute, as well as the security for the payment of the same.

Therefore, it was proper and correct that we should, upon serious consideration of these principles of law, have said, in the matter of Orloff Lake, 40 Ann. 148, that "the provisions of Article 210 of the

Constitution of 1879 have *exclusive* reference to the taxes that may be assessed under laws passed in pursuance thereof; and those of the ordinance for the relief of delinquent tax payers, to delinquent taxes that were assessed in years antecedent to its adoption by the public."

It justified the language employed by us in Reed vs. His Creditors, 39 Ann. 123, viz: " The Constitution and the ordinance for the relief of delinquents dissevered ' back taxes' from ' current taxes.' They did not operate a repeal of prior revenue laws; but some were thereby most distinctly left in full force for, at least, all purposes of *collecting the taxes that had been assessed under them.*"

To my mind it is perfectly obvious that the taxes involved in the instant case are governed by the laws of 1880 and 1882; but, notwithstanding they are only secured by a legal mortgage, it is prescriptible by *three* years under the former, and by five years under the latter, and is extinguished in either event. Hence it would serve no useful purpose, should this theory prevail, to require an additional rule for its formal cancellation; and I, therefore, concur in the decree for the reason that the same end is reached by either course of argumentation and reasoning.