# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #009

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY Cole, J.:**

2025-CA-00708      ESPLANADE MALL REALTY HOLDINGS, LLC   VS.   JOSEPH P. LOPINTO III, IN HIS CAPACITY AS SHERIFF AND EX-OFFICO TAX COLLECTOR FOR JEFFERSON PARISH (Parish of Jefferson)

REVERSED, RENDERED, AND REMANDED. SEE OPINION.

Weimer, C.J., dissents and assigns reasons.
Griffin, J., dissents for the reasons assigned by Weimer, C.J.
Guidry, J., dissents for the reasons assigned by Weimer, C.J.

ESPLANADE MALL REALTY HOLDINGS, LLC

VS.

JOSEPH P. LOPINTO III, IN HIS CAPACITY AS SHERIFF AND EX-
OFFICO TAX COLLECTOR FOR JEFFERSON PARISH

ON APPEAL FROM THE 24TH JUDICIAL DISTRICT COURT,
PARISH OF JEFFERSON

COLE, J.*

This case arises out of the Court's exercise of its appellate jurisdiction pursuant to Article V, § 5(D)(1) of the Louisiana Constitution, since it involves review of the trial court's determination that La. R.S. 47:2131 is unconstitutional. We invoke the doctrine of constitutional avoidance and find a determination of that issue is not required in this case. Based on the mandatory language of the statutes, we hold that the ad valorem taxes, interest, and costs at issue here are included as statutory impositions under the law and remand to the trial court to calculate the redemption price. As discussed below, the legislature has expressly resolved this exact issue in the new tax lien process, and any remedy concerning the redemption price due under the prior tax sale process must also be provided by the legislature.

**BACKGROUND**

In 1992, Esplanade Properties Corporation ("Esplanade Properties"), a subsidiary of R.H. Macy & Co., owned the immovable property on which a Macy's store was located at Esplanade Mall in Kenner ("Macy's Parcel"). In January 1992, Esplanade Properties filed for bankruptcy protection in a case ultimately

---

* Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

consolidated with that of its parent company and numerous additional Macy's subsidiaries. *In re R.H. Macy & Co.*, No. 92-40477 (Bankr. S.D.N.Y., filed Jan. 27, 1992); *In re Esplanade Props. Corp.*, No. 92-40627 (Bankr. S.D.N.Y., filed Jan. 31, 1992). While the automatic bankruptcy stay was in effect pursuant to 11 U.S.C. § 362(a), Jefferson Parish issued a tax bill to Esplanade Properties for ad valorem taxes for tax year 1992 on the Macy's Parcel in the amount of $130,914.38.

In May 1993, then-Sheriff Harry Lee conducted a tax sale of the Macy's Parcel for alleged failure of Esplanade Properties to pay the 1992 taxes, with the Property being adjudicated to Jefferson Parish. In December 1994, the bankruptcy court confirmed Esplanade Properties' Second Amended Joint Plan of Reorganization and the automatic stay was lifted. In 2000, because the earlier tax sale violated the automatic stay, it was deemed absolutely null and the Sheriff recorded a certificate canceling that tax sale. The Sheriff took no action to collect the 1992 ad valorem taxes due on the property between 2000 and 2018.

After a series of post-bankruptcy mergers and transfers within the Macy's corporate structure, the Macy's Parcel was sold again in late 2017. Several months later, the Macy's Parcel was conveyed to Esplanade Mall Realty Holding, LLC ("Esplanade Mall"). On December 4, 2018, Esplanade Mall received a document entitled "Corrected Notice" concerning ad valorem taxes for the Macy's Parcel. The notice asserted that in addition to payment being due for the regular applicable taxes, the sum of $458,210.83 was due for "previous bills." After an inquiry, Esplanade Mall determined that the "previous bills" referenced in the notice were the principal for 1992 taxes along with related interest and costs. Esplanade Mall contends that the past due amounts were uncollectible due to the three-year limitation on conducting tax sales. La. R.S. 47:2131. Though Esplanade Mall requested that the Sheriff remove these past charges from the notice, the Sheriff declined to do so.

Esplanade Mall filed its initial petition in July 2019, seeking a declaration that the 1992 taxes could not be collected by a new tax sale of the Macy's Parcel. It further sought a declaration that Jefferson Parish cannot conduct a tax sale or assert any liens, privileges, or other security interest against the Macy's Parcel.[1] To collect on the outstanding bill it contended was due in full, the Sheriff conducted a tax sale of the Macy's Parcel on August 26, 2020, and the property was adjudicated to Jefferson Parish. The tax sale certificate included the 2019 tax bill amount and listed the total amount due at $546,730.70. The line items included, *inter alia*:

TAXES 57,358.32 . . . .

1992 TAXES 130,914.38

1992 INTEREST 353,468.83

1992 COSTS 10.50

After the tax sale, the Sheriff asserted that "the 1992 ad valorem taxes on the Macy's Parcel have been collected and satisfied as a result of the August 26, 2020" tax sale. In response, Esplanade Mall filed its Second Supplemental and Amended Petition. It alleged the right to collect the 1992 taxes had prescribed long before August 26, 2020, the purchase price at the tax sale could not validly have included the 1992 tax liability, and the redemption price for the tax sale must be limited to the new taxes, together with interest and costs pertaining to those taxes. Esplanade Mall prayed for declaratory relief in accordance with these allegations.

Jefferson Parish filed an exception of no cause of action, arguing that because Esplanade Mall did not pay the disputed taxes under protest as required by La. R.S. 47:2134, it had no cause of action. The trial court sustained the exception of no cause of action and dismissed the suit and the court of appeal affirmed. *Esplanade Mall Realty Holding, LLC v. Lopinto*, 21-554 (La. App. 5 Cir. 4/27/22), 362 So. 3d 725.

---

[1] Esplanade Mall filed its First Amended Petition on June 19, 2020.

3

This court reversed the lower court judgments and remanded for further proceedings. *Esplanade Mall Realty Holding, LLC v. Lopinto*, 22-0940 (La. 11/8/22), 349 So. 3d 559. Esplanade Mall did not pay the tax bill in 2019 by the statutory deadline of December 31, 2019, and it did not pay any disputed amount under protest.

While its first writ was pending before this Court, Esplanade Mall sold the Macy's Parcel to an unrelated entity known as Pacifica Kenner, LLC and Pacifica Kenner was substituted as plaintiff. After this Court granted the writ and remanded to the trial court, Pacifica Kenner filed a motion for summary judgment. Among other things, it argued the portion of the 2020 tax sale deed that includes the 1992 taxes, interest, and costs as part of the tax sale price is ineffective and null. In support, it contended La. R.S. 47:2131 prohibited a tax sale of the collection of any taxes after three years. The Parish opposed the motion. It argued La. R.S. 47:2131 violated the provisions of La. Const. art. VII, § 3(A) and La. Const. art. VII, § 16. The trial court denied the motion.

The matter proceeded to trial. The trial court ruled that La. R.S. 47:2131 is unconstitutional, stating, in pertinent part:

> This Court finds that La. R.S. 47:2131 is unconstitutional, because the statute violates both Section 16 and Section 3(A) of Article 7 of the Louisiana Constitution. A statutory scheme in which *ad valorem* property taxes do not prescribe, yet a municipality's right to collect them does prescribe, defies logic. If it is the Louisiana Legislature's will to limit the tax collector's ability to collect taxes, the Louisiana Constitution must first be amended to bring these laws into alignment. Until then, this Court cannot uphold a statute that operates as the functional equivalent of a prescriptive period on *ad valorem* property taxes.

The trial court made no ruling on the statutory issue and denied Pacifica Kenner's claims for declaratory judgment. Due to the ruling of unconstitutionality, Pacifica Kenner appealed directly to this Court.

## ANALYSIS

It is a well-settled principle that courts should avoid reaching or determining the constitutionality of legislation unless it is essential to resolution of the case. *Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin.*, 98-0601, p.16-17 (La. 10/20/98), 720 So. 2d 1186, 1199. Courts should avoid constitutional rulings when the dispute can be resolved on non-constitutional grounds, a principle rooted in the realization that, "by the very nature of the judicial process, courts can most wisely determine issues precisely defined by the confining circumstances of particular situations." *Id.* (quoting *Parker v. County of Los Angeles*, 338 U.S. 327 (1949)).

Rather than ruling on Pacifica Kenner's request for declaratory relief based on the relevant statutes, the trial court found La. R.S. 47:2131 unconstitutional.[2] This was error, as the matter can be resolved solely by reference to the statutory regime set forth in Title 47.[3]

### Inclusion of Tax Liability Older Than Three Years in a Tax Sale

The critical question is whether statutory impositions, including ad valorem taxes themselves, more than three years old may be components of the price of a tax sale conducted to collect ad valorem taxes less than three years old. The

---

[2] La. R.S. 47:2131 provides:

> Once three years after December thirty-first of the year in which ad valorem taxes are due have passed, except for adjudicated property, no tax sale shall be conducted with regard to such taxes, provided that the time period shall be suspended by the pendency of any suit which presents the collection of the taxes, and the time of the suspension shall be excluded from the computation of the three years.

The trial court specifically ruled that the law violates La. Const. article VII, § 3(A) and article VII, § 16. *See* La. Const. Art. 7 § 3(A) ("The legislature **shall prohibit the issuance of process** to restrain the collection of any tax . . . .") (emphasis added); La. Const. Art. 7 § 16 ("Taxes, **except real property taxes**, and licenses shall prescribe in three years after the thirty-first day of December in the year in which they are due, but prescription may be interrupted or suspended as provided by law.") (emphasis added).

[3] Effective January 1, 2026, the state tax laws were significantly overhauled, essentially shifting from a tax sale system to a tax lien system. Because the new law does not contain a retroactivity clause, the pre-2026 system applies to this case. *See* La. R.S. 1:2 ("No Section of the Revised Statutes is retroactive unless it is expressly so stated."). We discuss these amendments later in the opinion.

interpretation of the statutory regime presents the purely legal issue of whether more-than-three-year-old taxes, interest, and costs may be collected in a tax sale.

As an initial matter, the Sheriff contends the property is not redeemable, because property sold at tax sale to a third party normally is subject to a three-year redemption period after which the tax sale purchaser becomes the owner. La. Const. art. VII, § 25(B)(1); La. R.S. 47:2155(A). However, the property at issue here was adjudicated to Jefferson Parish because there was no third-party purchaser at the tax sale. Louisiana Revised Statute 47:2246 established a separate redemption period for adjudicated properties, allowing for redemption up until the later of the political subdivision's alienation of the property, or six months after advance notice of the alienation. We therefore disagree with the Sheriff and find that Pacifica Kenner may still redeem the adjudicated property.[4]

We answer the primary question in this case by examining the language of the relevant statutes. "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. R.S. 1:4. *See also Bergeron v. Richardson*, 20-1409, p.9 (La. 6/30/21), 320 So. 3d 1109, 1116 ("Because of Louisiana's civilian tradition, Louisiana courts must begin every legal analysis by examining primary sources of law, consisting of the constitution, codes, and statutes."). During the relevant time, La. R.S. 47:2131 provided:

> Once three years after December thirty-first of the year in which ad valorem taxes are due have passed, except for adjudicated property, ***no tax sale shall be conducted with regard to such taxes***, provided that the time period shall be suspended by the pendency of any suit which presents the collection of the taxes, and the time of the suspension shall be excluded from the computation of the three years.

(Emphasis added.)

---

[4] Like the other changes to the law, La. R.S. 47:2246 was also changed, effective January 1, 2026. While the previous provision dealt with the adjudication of properties in a sale, it was revised to state: "On the terms and conditions established by the political subdivision, any person may purchase from a political subdivision a tax lien evidenced by a tax lien certificate issued in favor of and held by the political subdivision. A person who purchases a tax lien pursuant to this Section shall have the same rights as any other tax lien certificate holder pursuant to this Chapter."

6

Pacifica Kenner seeks a declaratory judgment that (1) the portion of the 2020 tax sale deed that includes the 1992 taxes, interest, and costs as part of the tax sale price is ineffective and null; (2) the redemption price for the property does not include the 1992 taxes, interest, and costs; and (3) Pacifica Kenner has no personal liability for any ad valorem taxes, interest, and costs assessed against its property. Pacifica Kenner contends the Court should declare that it can redeem the August 26, 2020 tax sale by paying only that part of the price associated with the 2019 ad valorem taxes assessed on the property, not the full amount the Sheriff seeks. According to Pacifica Kenner, the bulk of the amount sought by the Sheriff (*i.e.*, the statutory impositions consisting of the 1992 taxes, interest, and costs) is an amount that is "with regard to" the 1992 taxes—well beyond the previous three years and in violation of La. R.S. 47:2131. We disagree.

Title 47, specifically La. R.S. 47:2154(C), permitted the Sheriff to include the 1992 taxes, interest, and costs as a statutory imposition in the 2020 tax sale certificate. At the time the tax sale was conducted, La. R.S. 47:2154(C) expressly provided: "The [tax sale] price ***shall be the amount of statutory impositions*** due on the property, costs, and interest." (emphasis added). This language requires the Sheriff to include all statutory impositions in the tax sale price.

The question then becomes whether the line-item charges on the tax sale certificate that go beyond the three-year period qualify as "statutory impositions" such that they must be included as a component of the tax sale price. A "statutory imposition" is specifically defined as "ad valorem taxes and any imposition in addition to ad valorem taxes that are included on the tax bill sent to the tax debtor." La. R.S. 47:2122(14). The definition of "statutory imposition" is not subject to any statutory exclusions or exceptions—no language removes the more-than-three-year-

7

old tax charges related to the Macy's Parcel that are at issue here.[5] Accordingly, the 1992 ad valorem tax and related charges are statutory impositions within the definition of La. R.S. 47:2122(14), which the Sheriff was required by La. R.S. 47:2154(C) to include as a component of the price of the 2020 tax sale conducted to collect the unpaid 2019 ad valorem taxes.[6]

We therefore find that the Sheriff complied with legal requirements in setting the price for the 2020 tax sale and deny Pacifica Kenner's request for declaratory relief that the portion of the tax sale deed that includes the 1992 taxes, interest, and costs as part of the tax sale price is ineffective and null. The plain language of La. R.S. 47:2154(C) allowed the Sheriff to include statutory impositions related to the more-than-three-year tax charges in the price of the sale, in addition to the unpaid 2019 ad valorem tax that prompted the tax sale.[7]

As discussed in detail below, the statutory redemption price effective here provides "[p]ayment shall include ***all statutory impositions accruing before the date of payment*** with a five percent penalty and simple interest accruing at one percent

---

[5] This Court has found limits on what an assessor may collect through delinquent taxes on immovable property, and those cases further reinforce our reading of this statute. In *Fransen v. City of New Orleans*, 08-0076 (La. 7/1/08), 988 So. 2d 225, the Court found a municipal ordinance unconstitutional "to the extent imposes penalties, other than interest, upon delinquent ad valorem property taxes on immovables." *Id.* at 246. The Court found that government subdivisions are permitted to impose "***only the taxes, interest and costs***" in proceeding to sell the property for the delinquent ad valorem taxes," not additional penalties. *Id.* (emphasis added). Though the question here is removal of charges rather than inclusion of charges, the list is clear that statutory impositions include "taxes, interest, and costs," without limitation.

[6] Pacifica Kenner argues that this is a linguistic sleight of hand that simply rebrands old taxes and permits them to be assessed in violation of La. R.S. 47:2131. This argument is unpersuasive. The context of the statute is important here, as it does not regulate the price of a tax sale at all, nor does it prohibit including tax sale debt as a statutory imposition—instead, it prohibits ***conducting*** a tax sale "with regard to" an ad valorem tax more than three years old. La. R.S. 47:2131. The price of that timely tax sale is set in accordance with La. R.S. 47:2154(C) without any limitation thereon.

[7] In characterizing this opinion as disregarding "over a century of jurisprudence," the dissent relies on cases construing predecessor tax statutes and disregards the fact that the statutory language we are called upon to interpret did not exist at that time. The Legislature added the governing language here well after *Davidson v. Lindop*, 36 La. Ann. 766 (1884) and *Succession of Stewart*, 41 La. Ann. 127, 6 So. 587 (1889). Accordingly, those cases necessarily did not construe the relevant defined terms for the duly enacted 2008-2025 tax sale structure and do not control the interpretation of "statutory impositions" presented in this case, which turns on materially different statutory language than what was enacted in the 1800s. Our decision today relies solely on the clear text enacted to govern the period in question.

per month…" La. R.S. 47:2243 (emphasis added). Therefore, the three-year prohibition in La. R.S. 47:2131 on conducting a tax sale does not provide protection if the owner fails to pay subsequent taxes and subjects the property to a tax sale. Since the Louisiana Constitution expressly provides that *ad valorem* taxes never prescribe, the text of the law in effect from 2008 to 2025 included this snare, making the redemption price textually include all statutory impositions without limit, including these old, but unprescribed, taxes. We recognize that if someone inadvertently fails to pay their current taxes, the result of owing old taxes in the redemption process could be inequitable. While we are constrained to find in the Sheriff's favor by the statutory language, the legislature may consider addressing this issue by amending the statutorily required redemption price to exclude older taxes like these.

In fact, the legislature appears to have taken notice of the potential problems posed by the broad nature of the prior statute and has resolved them going forward. A new provision in the law effective January 1, 2026, La. R.S. 47:2151.1, expressly excludes more-than-three-year-old delinquent charges from being included as statutory impositions under the new tax lien regime. The statute now provides: "***[u]npaid statutory impositions that have been delinquent for a period of three years or more shall not be included in the sale price at any tax lien auction***." La. R.S. 47:2151.1 (emphasis added.) This demonstrates that the legislature is fully capable of drafting a law providing express statutory exclusions for unpaid statutory impositions more than three years old—and in fact has done so going forward—but had not provided these exclusions at the relevant time in this case. *See*, *e.g.*, *Ebinger v. Venus Const. Corp.*, 10-2516 (La. 7/1/11), 65 So. 3d 1279, 1284 ("[I]t is presumed the legislature's actions in drafting a law were knowing and intentional."); *Kocher v. Truth in Pol., Inc.*, 2020-01153 (La. 12/22/20), 307 So. 3d 182, 184 (per curiam) ("The legislature is presumed to have acted with deliberation and to have enacted a

9

statute in light of the preceding statutes involving the same subject matter.")
(quotation omitted).

Any concerns regarding notice and finality are also rendered unavailing by the unique facts of this case. When Pacifica Kenner's predecessor in title, Esplanade Mall, failed to pay the 2019 taxes under protest, it opened the door to the including as statutory impositions the line items more than three years old.[8] Esplanade Mall admitted it did not pay the 2019 taxes on the Macy's Parcel by the statutory deadline of December 31, 2019. Had Esplanade Mall paid the 2019 ad valorem taxes due on the Macy's Parcel, including under protest, at any time before the August 26, 2020, tax sale, then the tax sale could not have proceeded, because there would be no statutory imposition less than three years old for which to conduct the tax sale. The circumstances here only arose because the 2020 tax sale was conducted to collect unpaid 2019 ad valorem taxes—which were less than three years old at the time of the tax sale. Further, the current plaintiff, Pacifica Kenner, obviously was aware of the assessments at the time of its purchase of the Property, which occurred after this litigation commenced.[9]

---

[8] The petition contains no allegation that Esplanade Mall paid the 2019 ad valorem tax bill for the Property under protest, or that a timely payment under protest gave notice to Sheriff of an intention to sue for a refund of such protested payment. *See generally* La. R.S. 47:2134(B)(1)(a) (taxpayer challenging statutory impositions "shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the statutory impositions or timely file a rule to set bond or other security pursuant to Subsection F of this Section"); La. R.S. 47:2134(B)(2)(c) ("If a taxpayer timely seeks recovery of statutory impositions in an action contesting the correctness of the assessment . . ., then that portion of the statutory impositions paid that are in dispute shall be deemed as paid under protest, and that amount shall be segregated and shall be further held pending final judgment."); La. R.S. 47:2134(C)(2) ("A legality challenge action shall be brought no later than thirty days from the date of the protested payment.").

[9] Pacifica Kenner also seeks a declaration that it has no personal liability for the ad valorem taxes. A taxing authority may collect delinquent ad valorem taxes only by acting against the tax debtor's immovable property, and not against the tax debtor individually. *Mooring Tax Asset Group LLC v. Janes*, 14-0109, p. 12, 156 So. 3d 1143, 1151. The Court has explained:

> [T]axes levied on real property are a charge laid exclusively upon the property assessed, and collectible only out of said property, and neither the owner of said property, nor any other property of his, is liable for said taxes. Such taxes serve as a lien upon the specific piece of real estate. Moreover, this court has held that collection of delinquent real estate taxes can only be collected by tax sale of the property, not a personal suit against the property owner. Because immovable property taxes are exclusively a charge upon the property assessed and collectable only from tax sale of that property, it is clear that any obligation relative to those taxes did not follow the [owners] once they sold the property.

10

**Redemption Price**

Pacifica Kenner also seeks declaratory relief that the redemption price for the Property "does not include the 1992 taxes, interest, and costs." We are likewise constrained to deny this request and deny any relief that would annul the tax sale. The version of La. R.S. 47:2243 in effect at the time of the sale did not exclude from the redemption payment any statutory impositions consisting of ad valorem tax debt. Instead, it broadly stated: "Payment shall include ***all statutory impositions accruing before the date of payment*** with a five percent penalty and simple interest accruing at one percent per month, as well as all other sums required to be paid pursuant to this Subpart. . . . ." La. R.S. 47:2243 (emphasis added). This section gives no discretion to the Sheriff to reduce the redemption price, as the taxes remain unpaid and statutory impositions have continued to accrue, or provide discretion to annul any portion of it in this case. The charges at issue are included in the redemption payment requirement as statutory impositions under La. R.S. 47:2122(14).[10]

Pacifica Kenner contends the proper redemption price is $91,242.35. The Sheriff contends the proper redemption price is $863,834.51. We remand the matter to the trial court to set the proper redemption price in a manner consistent with this opinion.

---

Thus, the obligation to clear the tax sale deed from the title to the property, which we now hold cannot be accomplished without paying the tax purchaser's costs, necessarily belongs to the current owner of the property.

*Id.* (internal citations and quotation marks omitted).

[10] La. Const. art. VII, sec. 25(B)(1) ("The property sold shall be redeemable for three years after the date of recordation of the tax sale, ***by paying the price given***, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.").

**DECREE**

For the reasons set forth above, constrained by the broad statutory language, this Court denies Pacifica Kenner's request for declaratory relief. We specifically decline to find that (i) the 1992 taxes, interest, and costs must be declared invalid and unenforceable; or (ii) the redemption price is "free from" the 1992 taxes, interest, and costs. The matter is remanded to the trial court for all further proceedings required consistent with this opinion, including the calculation of the redemption price.

**REVERSED, RENDERED, AND REMANDED**

**SUPREME COURT OF LOUISIANA**

No. 2025-CA-00708

**ESPLANADE MALL REALTY HOLDINGS, LLC**

**VS.**

**JOSEPH P. LOPINTO III, IN HIS CAPACITY AS SHERIFF AND
EX-OFFICIO TAX COLLECTOR FOR JEFFERSON PARISH**

*On Appeal from the 24ᵗʰ Judicial District Court,
Parish of Jefferson*

**WEIMER, C. J.**, dissenting.

I respectfully dissent from the majority opinion. The 1992 *ad valorem* taxes and related interest and costs, although imprescriptible, can no longer be collected in conjunction with a 2020 tax sale, 28 years later. I would find La. R.S. 47:2131, which limits the time in which to collect *ad valorem* taxes, constitutional.

Ultimately, this controversy addresses the *collection* of taxes, not the setting of the *amount* of taxes owed. Setting of the *amount* is irrelevant if the collection cannot occur. The ability to collect the taxes and other associated charges prescribes in three years, which period has passed. While a dissertation on what *amount* can be collected is noteworthy, it is also irrelevant without the right to *collect* that amount.

Despite the majority's avoidance of the constitutional issue, the constitutionality of La. R.S. 47:2131 needs to be addressed. This issue could very well find its way back to this court and should be resolved to avoid a malodorous stink bomb being injected into a chain of title, which could take property out of commerce. The majority's opinion produces a result inconsistent with the legislation

and over a century of jurisprudence. This result could be avoided by reading all of the relevant laws *in pari materia*.[1]

The pertinent provisions of the tax code applicable to this case were enacted by 2008 La. Acts 819, § 1 and formed part of Subtitle III of the tax code on "Ad Valorem Taxes," Chapter 5 titled "Payment and Collection Procedure; Tax Sales; Adjudicated Property."[2] The definitions' provision in Chapter 5, La. R.S. 47:2122, in pertinent part provided:

> The following terms used in this Chapter shall have the definitions ascribed in this Section, unless the context clearly requires otherwise:
>
> . . . .
>
> 14) "Statutory imposition" means ad valorem taxes and any imposition in addition to ad valorem taxes that are included on the tax bill sent to the tax debtor.

Concerning payment and collection of *ad valorem* taxes, La. R.S. 47:2128 provided relative to statutory impositions:

---

[1] *In pari materia* means "[o]n the same subject; relating to the same matter." It is a canon of construction that statutes that are *in pari materia* may be construed together, so that inconsistencies in one statute may be resolved by looking at another statute on the same subject. BLACK'S LAW DICTIONARY (12th ed. 2024); see La. C.C. art. 13 ("Laws on the same subject matter must be interpreted in reference to each other.").

Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. **Cat's Meow, Inc. v. City of New Orleans**, 98-0601, p. 15 (La. 10/20/98), 720 So.2d 1186, 1198. When a law is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect; and its provisions must be construed to give effect to the purpose indicated by a fair interpretation of the language used. **Fairbanks Dev., LLC v. Johnson**, 20-01031, p. 5 (La. 9/30/21), 330 So.3d 183, 187 (citing La. C.C. art. 9 and La. R.S. 1:4). Courts are bound to give effect, if possible, to all parts of a law and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving every word can legitimately be found. *Id.*, 20-01031at 5-6, 330 So.3d at 187. The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. **Theriot v. Midland Risk Ins. Co.**, 694 So.2d 184, 186 (La. 1997). The meaning of the language in a statute may be sought by consulting other laws on the same subject matter. *Id.* Where a part of an act is to be interpreted, it should be read in connection with the rest of the act and all other related laws on the same subject. *Id.*

[2] These provisions were amended and repealed by 2024 La. Acts 774, § 1, effective January 1, 2026.

All statutory impositions including ad valorem taxes shall be paid along with the taxes. Failure to pay the statutory impositions in addition to the ad valorem taxes shall cause the immovable property to be subject to the same provisions of law that govern tax sales of immovable property.

"Failure to pay any statutory imposition in addition to the ad valorem taxes will also subject the property to a tax sale," in accordance with "the same provisions of law that govern tax sales of immovable property." La. R.S. 47:2128 & 2008 comment (b).

Of those tax code provisions, La. R.S. 47:2131, governing the "[t]ime period in which to conduct tax sales,"[3] provided:

Once three years after December thirty-first of the year in which ad valorem taxes are due have passed, except for adjudicated property, **no tax sale shall be conducted with regard to such taxes**, provided that the time period shall be suspended by the pendency of any suit which prevents the collection of the taxes, and the time of the suspension shall be excluded from the computation of the three years. [Emphasis added.]

Concerning the enforcement of the payment of taxes, Section 2131 "provides that the **tax sale must take place within three years of the time the statutory impositions** that form the basis of the tax sale are due." La. R.S. 47:2131, 2008 comment (b) (emphasis added).

Relative to tax sales and redemption of immovable property, La. R.S. 47:2154(C) (as amended by 2012 La. Acts 836, § 1) provided: "The **price** shall be the amount of statutory impositions due on the property, costs, and interest." (Emphasis added.) "[T]he price to be paid at the sale is the amount of statutory impositions." La. R.S. 47:2154, 2008 comment.

The fact that the 1992 *ad valorem* taxes and related interest and costs fit within the definition of "statutory impositions" under La. R.S. 47:2122(14), which pursuant

---

[3] La. R.S. 47:2131 entitled "Time period in which to conduct tax sales," was derived from 1886 La. Acts 26, §§ 1, 2, and former La. R.S. 47:2111(1950). See La. R.S. 47:2131, Historical and Statutory Notes.

to La. R.S. 47:2154(C) shall be included in the tax sale price, does not resolve the issue currently before the court. While I agree that the tax sale price shall be calculated by the sheriff in accordance with La. R.S. 47:2154(C), La. R.S. 47:2122(14), and La. R.S. 47:2128, which do not include a three-year limitation on the statutory impositions to be included in the tax sale price, this court is being called on to reconcile and harmonize these provisions with La. R.S. 47:2131, which clearly placed a three-year limitation on the "[t]ime period in which to conduct tax sales." See **ABL Mgmt., Inc. v. Bd. of Sup'rs of S. Univ.**, 00-0798, p. 6 (La. 11/28/00), 773 So.2d 131, 135 (in interpreting a statute, courts have a duty to, where possible, adopt a construction which harmonizes and reconciles it with other provisions in the applicable statutory scheme).

Because La. R.S. 47:2131 speaks in terms of the "tax sale" as opposed to the tax sale "price," the majority (focusing on the definition of "price" set forth in La. R.S. 47:2154(C)) concludes that the sheriff properly set the tax sale "price" in conjunction with the timely tax sale related to the 2019 tax assessment, which opened the "tax sale" to collection of any and all delinquent statutory impositions.[4] **Esplanade Mall Realty Holdings, LLC v. Lopinto**, 25-0708 (La. 3/_/26), slip op., p. 8 n.6. Such a holding implies that the legislature adopted La. R.S. 47:2131 solely to prohibit a tax sale when **all** of the delinquent statutory impositions are more than three years old. In addition to producing an absurd result, such a finding is inconsistent with a stated purpose of Chapter 5 governing the "Payment and Collection Procedure; Tax Sales; Adjudicated Property" which is in part to

---

[4] The majority rationalizes that La. R.S. 47:2131, which imposes the three-year limitation, "does not regulate the price of a tax sale at all, nor does it prohibit including tax sale debt as a statutory imposition." **Esplanade Mall Realty Holdings, LLC v. Lopinto**, 25-0708 (La. 3/_/26), slip op., p. 8 n.6. While this is true, the issue presented is the collectablity of the tax. If the tax cannot be collected, the amount is of no moment.

"[e]ncourage the return to commerce of tax sale and adjudicated properties, without unnecessary public expense, through clear procedures that allow interested persons to carry out the title search and notification procedures considered necessary under contemporary standards of due process to acquire merchantable title to those properties," as well as prior decisions of this court. See La. R.S. 47:2121(A)(5); see also **Davidson v. Lindop**, 36 La. Ann. 766 (1884); **Succession of Stewart**, 41 La. Ann. 127, 130, 6 So. 587, 588 (1889). For over a century, this court has consistently found that the tax sale price is also affected by provisions governing the enforcement of the payment of taxes, like La. R.S. 47:2131. See **Davidson**, 36 La. Ann. 766; **Succession of Stewart**, 41 La. Ann. at 130, 6 So. at 588.

Because La. R.S. 47:2131 prohibits a tax sale from being conducted "with regard to" an *ad valorem* tax more than three years old, I find (being mindful of the court's duty to harmonize, reconcile, and give meaning to both La. R.S. 47:2154(C) and La. R.S. 47:2131) that, for a tax sale to be conducted in accordance with the applicable law, *ad valorem* taxes and related charges that are more than three years old have to be deducted from the price determined pursuant to La. R.S. 47:2154(C).[5] See **Eclectic Investment Partners, LP v. City of New Orleans**, 19-0895, p. 5

---

[5] As noted by the majority, the enactment of La. R.S. 47:2151.1, effective January 1, 2026, resolves the issue currently before this court. To the majority, "the legislature appears to have taken notice of and resolved the potential problems posed by the broad nature of the prior statute," see **Esplanade Mall Realty Holdings, LLC**, 25-0708, slip op. at 9; however, this enactment more likely signifies the legislature's approval and adoption of this court's century-old interpretation of the statutory scheme. See **Davidson**, 36 La. Ann. 766; **Succession of Stewart**, 41 La. Ann. at 130, 6 So. at 588. The legislature is presumed to know longstanding decisions of this court. See **Borel v. Young,** 07-0419, p. 18 (La. 11/27/07), 989 So.2d 42, 63 (on reh'g).

The majority's position suggests the legislature enacted a law which was problematic and fixed it. An *in pari materia* reading of all of the applicable provisions reveals that the legislature created no such "problem." Such a reading gives our colleagues in the legislature the credit they are due and avoids the "problem" they are accused of creating and respects the consistent, over-a-century rationale, that was not problematic. The sanctity of titles and the importance of unencumbered real estate recognized since the inception of Louisiana's civil law system provides that the law should not be interpreted to create the "problem" the majority finds.

(La.App. 4 Cir. 4/8/20), 364 So.3d 422, 428 (Dysart, J., dissenting) ("a taxing authority's failure to timely institute a tax sale results in the legal consequence that taxes more than three years delinquent cannot not be included in the tax sale."). Such a finding promotes the finality and clarity of title and the extinguishment of claims by taxing authorities who sleep on their rights. See *id.*, 19-0895 at 5, 364 So.3d at 428-29 ("To hold otherwise would allow a taxing authority, careless in timely instituting tax sales (or realizing that a repeatedly delinquent taxpayer will not pay taxes) to wait indefinitely to provoke a tax sale, and then recoup all of the outstanding taxes from a tax sale purchaser. This could lead to the absurd consequence of a tax sale purchaser paying many years, perhaps decades or more, of delinquent taxes."). Moreover, the majority decision renders La. R.S. 47:2131 superfluous and meaningless.[6] See *id.*, 19-0895 at 5, 364 So.3d at 429 ("the result ... render[s] La. R.S. 47:2131, and the limitations set forth therein, meaningless.").

By ignoring the impact that La. R.S. 47:2131 logically has on the determination of the tax sales price, the majority's approach breathes life into the ability to collect *ad valorem* taxes--a right that already expired. However, once the right to collect has prescribed, it cannot be resurrected. For these reasons, the constitutionality issue cannot be avoided in this case.

The trial court ruled that La. R.S. 47:2131 violates La. Const. art. VII, § 3(A), which provides: "The legislature shall prohibit the issuance of process to restrain the collection of any tax." This provision prohibits parties from using the courts to enjoin

---

[6] No provision should deemed superfluous but each must be read to have meaning. See **SWAT 24 Shreveport Bossier, Inc. v. Bond**, 00-1695 p. 19 (La. 6/29/01), 808 So.2d 294, 307 ("all parts of the statute are given meaning"); **First Nat'l Bank of Boston v. Beckwith Machinery Co.**, 94-2065, p. 8 (La. 2/20/95), 650 So.2d 1148, 1153 (noting that "[c]ourts should give effect to all parts of a statute, and not adopting a construction making any part superfluous or meaningless, if that result can be avoided.").

6

a tax sale. See **Great Lakes Dredge & Dock Co. v. Huffman**, 319 U.S. 293, 297 (1943); La. R.S. 47:1575 (governing injunctions). It does not prevent the legislature from enacting laws governing the collection of *ad valorem* taxes. To the contrary, La. Const. art. VII, § 1 expressly vests the power of taxation in the legislature.

The trial court also found that La. R.S. 47:2131 violates La. Const. art. VII, § 16, which provides: "[t]axes, except real property taxes, and licenses shall prescribe in three years after the thirty-first day of December in the year in which they are due, but prescription may be interrupted or suspended as provided by law." Based on La. Const. art. VII, § 16, taxes on immovable property are imprescriptible. **Davidson**, 36 La. Ann. 766; **Succession of Stewart**, 41 La. Ann. at 130, 6 So. at 588. Although imprescriptible, this court for over a century has found that enforcement of the payment of taxes may be time-barred based on the manner or mode of enforcement prescribed by law.[7] See *id.*; **Bilbe v. Foster**, 15-0302, pp. 7-8 (La.App. 4 Cir. 9/9/15), 176 So.3d 542, 547 (citing La. Const. art. VII, § 16 and La. R.S. 47:2131) ("The right to proceed to a tax sale expires three years after the last day of the year in which the taxes were due, however, property taxes do not prescribe" by the lapse of three years.). The imprescriptibly of taxes is not affected by La. R.S. 47:2131, as this statute does not extinguish the tax debt. The legislature's authority to place a time limit of the collectability of taxes has long been recognized by this court. See **Succession of Stewart**, 41 La. Ann. at 130, 6 So. at 588. Based on the legislature's exercise of that authority in enacting La. R.S. 47:2131, the taxes remain as a natural

---

[7] As Judge Chase stated: "The practical result is an imprescriptible yet uncollectable tax debt on the property." **Harrier Enters., LLC v. Imbornone**, 19-0613 (La.App. 4 Cir. 1/29/20), 364 So.3d 396, 401 (Chase, J., concurring).

7

obligation of the nonpaying landowner.[8] Consequently, I find that the imprescriptibly

of taxes is not inconsistent with a time limitation on the collectability of taxes.[9]

Accordingly, the trial court erred in finding that La. R.S. 47:2131 violated La. Const.

art. VII, § 16.

For the above reasons, I respectfully dissent from the majority opinion. I

would reverse the trial court's judgment that declared La. R.S. 47:2131

unconstitutional and remand the matter for further proceedings.

---

[8] "A natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance." La. C.C. art. 1760. "A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed." La. C.C. art. 1761. If a taxpayer pays the tax for which he owes a natural obligation, the taxpayer cannot get the money back, unless paid under protest. See **Bilbe**, 15-0302 at 2, 7-8, 176 So.3d at 544, 547-48.

[9] With this finding the legislature obviously agrees as it continues to enact legislation that places a time limitation on the collectability of taxes. See La. R.S. 47:2151.1.